ORION CORPORATION, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 74–1432.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1975.

Decided April 28, 1975.

---

10. See note 5 *supra*.

Walter S. Davis, Milwaukee, Wis., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne and Roger T. Brice, Attys., N. L. R. B., Washington, D. C., for respondent.

Before CLARK, Associate Justice,* and CUMMINGS and TONE, Circuit Judges. .

PER CURIAM.

This case comes before the court on the Company's petition for review and the National Labor Relations Board's cross-petition for enforcement of a

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

Board order that the Company cease and desist from refusing to bargain with the Union, District 10, International Association of Machinists and Aerospace Workers, AFL–CIO. Since the Company concedes that it withdrew recognition of the Union by letter dated August 11, 1972, at issue is whether the Company's refusal to sign a collective bargaining agreement or to continue negotiations with the Union was justified on the grounds (1) that the Company reasonably believed the Union no longer represented a majority of the employees in the certified unit, or (2) that the Union in fact no longer had such support.

After four days of hearings on the complaint charging the Company with violations of sections 8(a)(5) and (1) of the Labor Management Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), the administrative law judge issued his decision on June 19, 1973, finding against the Company. In a decision and order dated May 16, 1974, a majority of a three-member panel of the Board sustained the findings and conclusions of the judge, with exceptions not here material. Member Kennedy, however, dissented. Since we find that the Board's decision was supported by substantial evidence, we hold that the order should be enforced.

The underlying facts of this case may be summarized as follows: As a result of an election held March 19, 1971, among the Company's production and maintenance employees which the Union won by a vote of 20 to 13, the Regional Director of the Board certified the Union as the representative of the unit. Protracted negotiations followed, culminating in a mediation session under the auspices of the Federal Mediation and Conciliation Service. The Union then sent the Company a request for "a finalized proposal in the form of a complete contract," but the Company refused to prepare such a written proposal, contending that during the long months of negotiation certain information had come to its attention to the effect that the Union no longer represented the majority of the unit due to growing dissatisfaction among the employees.

It appears from evidence introduced at the hearing that at the time the Company withdrew recognition, it possessed the following information about the Union's support among the employees of the unit: Joseph Moravchik, the Company's Operations Manager, received reports, both directly from the employees in question and by hearsay, that eleven or twelve unit employees had either quit the Union or had stopped paying dues. He was also told by six employees that they had not and would not join the Union. From the background information known to him regarding approximately eight other employees and his personal knowledge of them, he inferred that they would not be likely to join a Union. Therefore, Moravchik and the Company represented that they had information leading them to conclude that 24 to 26 of the approximately 44 employees in the unit, a majority, never supported or had defected from the Union.

Other evidence, presented at the hearing but not available to the Company at the time of the withdrawal of recognition, which tended to show the allegedly weakened condition of the Union's support, included nine letters of resignation from the Union, subpoenaed from the Union records; the lapsing of the membership of four other individuals for failure to pay dues, also evidenced by the subpoenaed records; and an admission by the Chairman of the Union Shop Committee, William Riedel, offered in testimony at the hearing, that on August 11, 1972, there were a total of about sixteen or seventeen members in the local unit of the Union. The Company implies that the admission should have been considered dispositive of the case as conclusive evidence that the Union no longer had majority support in fact, making irrelevant the belief of the Company or its agents, a position endorsed by Board member Kennedy in his dis-

sent, but finally argues that this testimony actually shows the reasonableness of the Company's belief that only a small proportion of the employees did support the Union.

The evidence upon which the Company relies to establish the reasonableness of the withdrawal of recognition tends only to show the number of members in the Union. Whether this showing would be sufficient to establish the number of employees who would vote in favor of the Union in a representation election is the core question here. The Board concluded that the reasoning it had used in Terrell Machine Co., 173 N.L.R.B. 1480, 1481 (1969), enf'd, 427 F.2d 1088 (4th Cir. 1970), was controlling:

> ". . . [A] showing as to employee membership in, or actual financial support of, an incumbent union is not the equivalent of establishing the number of employees who continue to desire representation by that union. There is no necessary correlation between membership and the number of union supporters since no one could know how many employees who favor union bargaining do not become or remain members thereof (citations omitted)." 173 N.L.R.B. at 1481.

The principal difficulty in resolving the central legal issue in this case is reconciling divergent treatments accorded the allocation and measure of the burden of proof in several of the leading refusal-to-bargain cases. Compare Stoner Rubber Co., 123 N.L.R.B. 1440, 1445 (1959) and Taft Broadcasting, 210 N.L.R.B. No. 113 (1973) with Terrell Machine Co., supra, 173 N.L.R.B. at 1481, and Automated Business Systems, Inc. v. N.L.R.B., 497 F.2d 262, 269–272 (6th Cir. 1974). It is well established that Board certification of a union as the representative of a unit creates a presumption of continued majority status for one year, which is conclusive, absent a showing of special circumstances. After the first year, the presumption remains, but becomes rebuttable. Brooks v. N.L.R.B., 348 U.S. 96, 98, 75 S.Ct. 176, 99 L.Ed. 125 (1954); see, e. g., Zim's Foodliner, Inc. v. N.L.R.B., 495 F.2d 1131, 1139 (7th Cir. 1974), cert. denied, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974). At issue here are the weight and effect of that rebuttable presumption of continued majority status.

There are two lines of cases, one emphasized in the Board's order relying on Terrell and the other in the Company's brief relying on Stoner. The Terrell approach holds that the presumption of continued majority is "sufficient to establish prima facie a continuing obligation to bargain" (427 F.2d at 1090), or in the words of this court, following Terrell,

> "The effect of the presumption is merely to require the employer to bargain with the previously recognized representative unless it can show (1) that the union in fact has lost its majority, or (2) at the least, that reasonable grounds exist for good faith doubt as to continuing majority support for the representative. Celanese Corp., 95 NLRB 664 (1951); Terrell Machine Co. v. NLRB, supra." Zim's Foodliner, Inc. v. N.L.R.B., supra, 495 F.2d at 1139.

The Stoner approach varies this formulation slightly:

> ". . . to overcome the presumption of majority the employer need only produce sufficient evidence to cast serious doubt on the union's continued majority status. The presumption then loses its force and the General Counsel must come forward with evidence that on the refusal-to-bargain date the union in fact did represent a majority of employees in the appropriate unit." 123 N.L.R.B. at 1445 (emphasis in original).

Of course, Stoner would permit the Company to introduce evidence to prove affirmatively that the majority had been eroded in fact, but the Board noted the difficult problems of proof and provided the "serious doubt" alternative as a standard more reasonable to impose

upon the employer under the circumstances.

In *Automated Business Systems, supra,* 497 F.2d at 269, the Sixth Circuit directly confronted the issue "of whether evidence sufficient to raise an employer's good faith doubts about the union's majority status is enough to shift the burden to the General Counsel to show a continuing majority," the same issue presented in the instant case. Upon an exhaustive examination of *Terrell, Stoner, Taft,* and other cases, the court concluded,

"We find that once sufficient evidence has been presented to cast a doubt on the continued majority status, the burden shifts to the General Counsel 'to prove that, on the critical date, the union in fact represented a majority of the employees.' [Citations omitted.] Thus, evidence sufficient to justify the company's withdrawal of bargaining is sufficient to shift the burden of proof to the General Counsel." 497 F.2d at 270.

■ We conclude that the two versions of the applicable standard argued to us in the case at bar are not inconsistent. If the employer can produce evidence proving that the union lacked a majority on the date in question, the presumption of continued majority has been rebutted and an absolute defense to a section 8(a)(5) complaint based on refusal to bargain established. See Maphis Chapman Corp. v. N.L.R.B., 368 F.2d 298, 303 (4th Cir. 1966); *cf.* Int'l Ladies' Garment Workers' Union, AFL–CIO v. N.L.R.B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). Alternatively, if the employer produces evidence of the existence of a good faith doubt as to the continuing majority status, the presumption is likewise rebutted and the burden shifts to the General Counsel to prove the union did represent a majority on the date in question. The "good faith doubt" must satisfy an objective test, although subjective evidence may be used to bolster the argument that such doubt existed at the relevant time. Automated

Business Systems, Inc. v. N.L.R.B., *supra,* 497 F.2d at 271 n. 7; Allied Industrial Workers, AFL–CIO Local Union No. 289 v. N.L.R.B., 155 U.S.App.D.C. 112, 476 F.2d 868, 881 (1973); Retail, Wholesale and Department Store Union, AFL–CIO v. N.L.R.B., 151 U.S.App.D.C. 209, 466 F.2d 380, 393 (1972); United States Gypsum Co., 157 N.L.R.B. 652, 656 (1966). The evidence must qualify as "clear, cogent and convincing." N.L.R.B. v. Tragniew, Inc., 470 F.2d 669, 674–675 (9th Cir. 1972).

■ The Company argues that its case has been made out by the presentation at the hearing of evidence which, taken as a whole, would cast "serious doubt" on the continued majority of the Union. But this view confuses the two different routes by which the Company can defend against the refusal-to-bargain complaint: either by showing sufficient evidence to support a reasonable good faith doubt, upon which the withdrawal of recognition was based—and thus which had to have been known to the Company at the time of the withdrawal—thereby shifting the burden of proof to the General Counsel; or by affirmatively proving by a preponderance of all evidence available at the time of the hearing that the Union in fact did not have majority support on August 11, 1972.

We find that the Board's conclusion that the Company succeeded in meeting neither of these tests was supported by substantial evidence, especially in light of the speculative and subjective nature of much of the information upon which Moravchik and the Company based their calculations of the Union's strength. Compare, *e. g.,* N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 592 (5th Cir. 1966), with Automated Business Systems, Inc. v. N.L.R.B., *supra,* 497 F.2d 262, National Cash Register Co. v. N.L.R.B., 494 F.2d 189, 194 (8th Cir. 1974), and Ingress-Plastene, Inc. v. N.L.R.B., 430 F.2d 542 (7th Cir. 1970). And since the determination as to the adequacy of the evidence was a question of fact, we must

defer to the fact-finder, the administrative law judge, as affirmed by the Board.

Order enforced.