594 F.2d 223
 101 L.R.R.M. (BNA) 2081, 86 Lab.Cas. P 11,260
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Carpenters Local Union 1959, United Brotherhood of
Carpenters and Joiners of America, AFL-CIO, Intervenor,
v.
TOP MANUFACTURING COMPANY, INC., Respondent.
 No. 77-3062.
 United States Court of Appeals,
Ninth Circuit.
 March 29, 1979.
 
 Allison W. Brown, Jr. (argued), Candace M. Carroll, Washington, D.C., for petitioner.
 David G. Moore (argued), Riverside, Cal., for respondent.
 Application for Enforcement of an Order of the National Labor Relations Board.
 Before HUFSTEDLER and WALLACE, Circuit Judges, and HAUK,* District Judge.
 PER CURIAM:
 
 
 1
 The Board seeks enforcement of its order based on the Board's findings that the company violated Section 8(a)(5) and (1) by withdrawing recognition from the union without any objective basis for reasonably doubting the union's continued majority status and by thereafter refusing to bargain with the union, and its finding that the company violated Section 8(a)(3) and (1) of the Act by refusing to offer reinstatement to unfair labor practice strikers after their unconditional offer to return to work.
 
 
 2
 As the parties recognize, under the circumstances of this case the union has a rebuttable presumption of majority status, and an employer's withdrawal of recognition from an incumbent union establishes a prima facie case of unlawful refusal to bargain. (E. g., NLRB v. Vegas Vic, Inc., 546 F.2d 828 (9th Cir. 1976).) The employer then has the burden to establish either (1) that the union has in fact lost its majority or (2) that the employer's refusal to bargain was predicated upon a good faith doubt of the union's continued majority status. To rely on the second defense, the employer's doubt must be asserted in good faith and must be a reasonable doubt based on objective criteria. (Pioneer Inn Associates v. NLRB, 578 F.2d 835 (9th Cir. 1978); NLRB v. Cornell of California, Inc., 577 F.2d 513, 518 (9th Cir. 1978); NLRB v. Vegas Vic, Inc., supra.)[1]
 
 
 3
 In this case, the company did not try to prove that the union had in fact lost its majority status. Therefore, the sole question is whether substantial evidence in the record as a whole supported the Board's determination that objective criteria did not support the company's subjective doubt of majority status. Although there was evidence that would have permitted the Board to have reached a contrary conclusion, the Board had ample evidence in the record to sustain its conclusion that the objective criteria did not support doubts about union representation. The union had been lawfully recognized as the employees' exclusive bargaining representative since 1966, and the most recent agreement was effective through June 30, 1976. In April, the union requested bargaining to negotiate a new agreement and the company agreed. The company did not then question the union's continued right to negotiate for the employees, but it did seek a more favorable contract because it claimed that it was suffering financial reverses which it argued foreclosed it from accepting the employee benefit package that the union sought.
 
 
 4
 On July 12, the 20 unit employees began an economic strike against the company. While the strike was still in progress, on August 5, the company notified the union that it had a good faith belief that the union no longer represented a majority of the unit employees and that it would no longer recognize the union as the employees' bargaining representative.
 
 
 5
 In support of its claim that objective criteria existed to sustain the subjective belief, the company offered evidence that nine of the unit employees crossed the picket line during the strike to return to work, and that five of those men talked with the company's president and expressed dissatisfaction with the union. Although employee expressions of dissatisfaction with the union may, under some circumstances, provide an objective criterion that supports a reasonable doubt of majority status (Automated Business Systems v. NLRB, 497 F.2d 262 (6th Cir. 1974)), the Board is not required to reach that conclusion, especially where, as here, the employee complaints were by relatively few of the members of the bargaining unit and the criticisms were more in the nature of grousing than a clear indication that the complainants no longer wished union representation. (E. g., NLRB v. Tahoe Nugget, Inc., 584 F.2d 293 at 305-306 (9th Cir. 1978); Pioneer Inn Associates v. NLRB, supra.) The return of some of the striking employees to work was specifically based in the case of two employees upon economic necessity, and as to the others, there is no indication that the return to work was a rejection of union representation.
 
 
 6
 The company's filing of an election petition at the same time that it refused to bargain is not probative either of an objective basis for a doubt of majority status, or of the existence of a subjectively held good faith belief at the relevant time. A request for an election should not be an excuse for refusal to bargain, but a preferred alternative to it. (See Brooks v. NLRB, 348 U.S. 96, 103, 104 n.18, 75 S.Ct. 176, 99 L.Ed. 125 (1954); Bally Case and Cooler, Inc. of Delaware v. NLRB, 416 F.2d 902, 905 (D.C.Cir.1969).)
 
 
 7
 We turn to the second prong of the Board's determination. Here, again, the controlling legal principles are not controverted. A strike begun in support of economic objectives becomes an unfair labor practice strike when the strike is expanded to include a protest over unfair labor practices. On that occasion, the strikers become unfair labor practice strikers, and they are entitled to an immediate reinstatement if they have not been permanently replaced prior to the conversion if they make an unconditional offer to return to work. As of August 5, the strikers in this case were entitled to immediate reinstatement upon the making of an unconditional offer. The offer was made by the strikers on September 30. By letter of October 12, 1976, and a letter of October 8, 1976, written on behalf of the company by the company's lawyer, the company stated that the former strikers would be rehired when openings occurred in jobs that they vacated. These letters, read together or separately, were not valid offers of reinstatement to unfair labor practice strikers because the letters did not offer the former strikers immediate employment. The letters would have been adequate with respect to economic strikers, but the company's letters were not sufficient as reinstatements to unfair labor practice strikers.
 
 
 8
 ORDER ENFORCED.
 
 
 
 *
 Honorable A. Andrew Hauk, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Ordinarily, there will be no occasion to examine the employer's subjective state of mind when the only issue is "good faith doubt" because a good faith doubt must be established by objective criteria. (NLRB v. Tahoe Nugget, Inc., 584 F.2d 293 (9th Cir. 1978).) This is not to say that subjective intent, as discerned from objective evidence, is never relevant. For example, " 'subjective evidence may be used to bolster the argument that such doubt existed at the relevant time.' " (Pioneer Inn Associates v. NLRB supra, at 839, Quoting NLRB v. Vegas Vic, Inc., supra, at 829; See NLRB v. Tahoe Nugget, Inc., supra, 584 F.2d at 300, n.25.) And where a claim of bad faith is made, the employer's motivation is in issue. "Even assuming a sufficient basis for a reasonable doubt, it is well settled that an employer violates Section 8(a) (5) if its doubt is not held in good faith." (NLRB v. Cornell of California, Inc., supra, at 518; See NLRB v. Sky Wolf Sales, 470 F.2d 827, 830 (9th Cir. 1972).) The impact of a claim of subjective bad faith was not in issue in Tahoe Nugget, nor is there any claim of bad faith in the case at bar