**N. T. ENLOE MEMORIAL HOSPITAL, Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**Nos. 80–7383, 80–7487.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1981.

Decided July 27, 1982.

Rehearing and Rehearing En Banc Denied Oct. 4, 1982.

Robert M. Stone, Musick, Peeler & Garrett, Los Angeles, Cal., for petitioner-cross respondent.

Kenneth B. Hipp, Washington, D. C., argued for respondent-cross petitioner; Richard Cohen, N.L.R.B., Washington, D. C., on brief.

Before MERRILL and TANG, Circuit Judges and VAN PELT *, District Judge.

TANG, Circuit Judge:

Enloe Memorial Hospital (Enloe) petitions for review of a National Labor Relations Board (NLRB) order finding that Enloe violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) & (1). The NLRB found that Enloe had refused to bargain with California Nurses Association (CNA), the exclusive bargaining representative of the unit employees, and had instituted unilateral changes in the wages and fringe benefits of the employees in April 1978. *N. T. Enloe Memorial Hospital and California Nurses' Association*, 250 NLRB 583 (1980). The NLRB cross-applies for enforcement of its order directing Enloe to bargain and to refrain from unilaterally altering the terms and conditions of employment in the unit. Because we conclude that the Board's decision is supported by substantial evidence and accords with applicable case law, we deny Enloe's petition and grant enforcement.

I

Since 1966, CNA has been the exclusive bargaining agent at Enloe Memorial Hospital. The first contract between CNA and Enloe covered April 1974 to March 1976. In 1976, CNA nurses struck. The parties entered a new agreement, effective April 1, 1976 through March 31, 1978, wherein CNA relinquished a dues check-off clause and a union security clause requiring all non-supervisory nurses to join CNA.

On December 16, 1977, Enloe filed a timely RM petition (representation petition filed by management) with the NLRB's Regional office, claiming a good faith doubt as to CNA's continued majority status. Based on the prima facie showing made by Enloe in its request, the Region notified both parties by telephone on January 19, 1978 that a hearing would be held January 27, 1978 on Enloe's petition. On that same day CNA sent Enloe a letter proposing February 15 or 22, 1978 as bargaining dates, and requested a response "as soon as possible". Enloe did not respond and on January 25, 1978, CNA filed a refusal to bargain charge. The Regional Director postponed the hearing on Enloe's petition indefinitely, pending resolution of CNA's charge. In March, the Region dismissed Enloe's petition and issued a complaint against Enloe based on CNA's refusal to bargain charge. Between the time of CNA's January 19 letter to Enloe and the Region's issuance of the complaint, CNA twice contacted Enloe about possible bargaining dates. On February 8, CNA wrote Enloe, presenting proposed changes in the collective bargaining agreement and asking Enloe to confirm one of the February dates previously proposed. On February 14, CNA sent a mailgram to Enloe, asking Enloe to notify CNA as to acceptable dates for initial negotiations. At the hearing before the Administrative Law Judge (ALJ), CNA representative Barbara Carr testified that she received no responses from Enloe concerning CNA's requests for negotiations.

The agreement between CNA and Enloe expired March 31, 1978. In April 1978, Enloe implemented wage and benefit changes for all of its personnel, including the bargaining unit involved here. The unfair labor practice complaint was amended to include a charge based on Enloe's unilateral implementation of wage and benefits changes.

The ALJ found that CNA enjoyed a presumption of majority status and that Enloe

---

* Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation.

failed to rebut the presumption because Enloe "did not have reasonable grounds on an objective basis for doubting the Union's majority." 250 NLRB at 588. The ALJ also found that Enloe had implemented wage and benefits changes without notifying CNA or giving CNA the opportunity to bargain.[1] The Board affirmed the rulings, findings and conclusions of the ALJ.

## II

Enloe contends that as a matter of law it was privileged to suspend bargaining for a new contract once the Regional Director had set a hearing date to consider the representation petition. Thus Enloe argues, it should have been shielded from a refusal to bargain charge, and the question whether Enloe's petition was supported by "objective considerations" should not have been reached by the Board.

### A.

Enloe relies primarily upon *George Braun Packing Co.*, 210 NLRB 1028, 1028 n.2 (1974), for the proposition that its bargaining obligation is suspended once a proper RM petition is filed. As here, the employer in *Braun* filed an RM petition which was following its normal course when the union filed a refusal to bargain charge. The General Counsel issued an unfair labor practice complaint and the Regional Director dismissed the RM petition. The ALJ, in determining the merits of the complaint, considered the employer's defense of a good faith doubt of the union's majority status. The ALJ found that the employer's doubt was in fact based on sufficient objective grounds, and dismissed the unfair labor practice complaint. The NLRB affirmed, reasoning:

> We are affirming the Administrative Law Judge's dismissal of the complaint herein because, in our view, the evidence set forth by him in his Decision is sufficient to meet the standards established in *United States Gypsum Company*, 157

NLRB 652, with respect to processing RM petitions. *Accordingly, as a proper RM petition* was filed herein, no violation based on a refusal to bargain may be found.

*George Braun Packing Co.*, 210 NLRB 1028, 1028 n.2 (1974) (emphasis added).

Enloe interprets the highlighted portion of the above paragraph to mean that an employer's obligation lapses once it files an RM petition. We disagree with this reading of *Braun*. The NLRB there purported to affirm the "rulings, findings, and conclusions" of the ALJ. The ALJ, in turn, found for the employer after he determined that the employer had established a good faith doubt defense, not because the employer had filed an RM petition. Thus, the reference to the phrase "proper RM petition" must be understood to mean an RM petition that is ultimately found to be based on sufficient objective grounds to establish a good faith doubt as to the union's majority status. Read in the context of the entire decision, *Braun* does not support the proposition that the mere filing of an RM petition will preclude a finding of refusal to bargain on the part of the employer. *See also NLRB v. Top Mfg. Co., Inc.*, 594 F.2d 223, 225 (9th Cir. 1979).

Aside from being unsupported by NLRB precedent, there is no compelling policy reason for suspending an employer's bargaining obligation upon the filing of an RM petition. When an employer files a representation petition, it is reasonable to require the employer to continue bargaining until the Regional Director has determined whether an election should be held. Otherwise, an employer could file a petition and rely on the petition alone as justification for suspension of bargaining. Enloe argues that when the Regional Director scheduled a hearing, this indicated a finding that a real question concerning representation existed. Enloe places far too much emphasis on the Regional Director's decision to schedule a hearing. That decision, based as it

---

1. Enloe does not specifically challenge the NLRB's finding that Enloe had unilaterally instituted changes in employee wage and fringe benefits. In light of our conclusion on the refusal to bargain violation, we enforce the NLRB's order in its entirety.

was on Enloe's prima facie showing in its petition and without Board investigation, cannot be interpreted as a board determination that a "real question concerning representation" existed.

■ We hold that the filing of an RM petition by an employer does not in itself suspend the employer's duty to bargain. Nor is that duty to bargain suspended when the Regional Director schedules a hearing based on an employer's petition alone, such as occurred here.

The Supreme Court has stated,

If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit.

*Brooks v. NLRB*, 348 U.S. 96, 103, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954) (dictum).

■ In this case Enloe had nothing to lose by continuing to bargain with CNA pending the outcome of its RM petition. This is not a case where Enloe was faced with two rival unions, each claiming majority status. Nor was Enloe even faced with an employee-sponsored decertification petition. By continuing to bargain with CNA, Enloe would have run no risk of a separate unfair labor practice charge such as that of bargaining with a minority union. Under such circumstances, Enloe should have continued to bargain until there was some independent sign, based on Board investigation beyond Enloe's petition itself, that the Union had lost majority support. Enloe could not have hurt itself by continuing to

bargain with CNA until its RM petition had fully run its course.[2]

### B.

■ Our rejection of Enloe's first argument means that we must decide whether, taking the record as a whole, there is substantial evidence to support the Board's finding that Enloe lacked reasonable grounds for doubting the Union's majority. To support a refusal to bargain charge, the "General Counsel must show that the union represented a majority of the employees in the unit at the time the employer refused to bargain with the union." *Sahara-Tahoe Corp. v. NLRB*, 648 F.2d 553, 555 (9th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981). Where, as here, the union is certified or has been voluntarily recognized, there is a presumption that the union enjoys majority support. One year after such certification or recognition, this presumption is rebuttable. To rebut this presumption, the employer must show "by clear, cogent, and convincing evidence, that the union was in the minority or that the employer had a good faith reasonable doubt of majority support at the time of the refusal." *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 397 (9th Cir. 1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). Moreover, this court has stated that "the evidence presented to establish reasonable good faith doubt, individually or cumulatively, must unequivocally indicate that union support had declined to a minority." *NLRB v. Silver Spur Casino*, 623 F.2d 571, 579 (9th Cir. 1980), *cert. denied*, 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294

---

**2.** *Helvetia Sugar Cooperative*, 234 NLRB 638 (1978) and *Telautograph Corporation*, 199 NLRB 892 (1972), cited by Enloe, are factually distinguishable from this case. In each it is true that the Board found that an employer's refusal to bargain was lawful in light of a pending representation petition. But in each case an employee, not an employer, had filed a decertification petition. Although Enloe argues that we should not accord this difference any weight, we find this difference important. Moreover, the ALJ in *Telautograph* specifically found that the mere "filing of a decertification petition in itself does not justify withdrawal of recognition." 199 NLRB at 893.

*Shea Chemical Corporation*, 121 NLRB 1027 (1958), cited by Enloe, is also inapposite. *Shea Chemical* involved two rival unions, each of whom claimed to represent a majority of the bargaining unit workers. In *Shea* the Board merely held that because there was a real question concerning representation, the employer was precluded from bargaining with either union. The Board specifically excepted from its holding situations where "the rival claim and petition does *not* raise a real representation question." *Id.* at 1029 (1958). *Shea* does not apply to this case.

(1981). Evidence presenting only an ambiguous inference of loss of majority support for the union is not enough. *See id.*

Enloe argues that it presented to the Board overwhelming evidence that it possessed a good faith doubt based on objective considerations. We disagree.

In reviewing the Board's decision, we must keep in mind that it is not our task to evaluate the credibility of the witnesses and the weight to be given their testimony. *NLRB v. Vegas Vic,* 546 F.2d 828, 829 (9th Cir. 1976), *cert. denied,* 434 U.S. 818, 98 S.Ct. 57, 54 L.Ed.2d 74 (1977). It is clear that the ALJ discounted much of Enloe's evidence as unreliable. Much of the evidence presented by Enloe to support its defense was in the form of testimony by supervisors recounting comments made by nurses from the time of the strike in 1976 until sometime before the unfair labor practice hearing in July 1978. The ALJ, who heard the testimony, found that such reports of employee discontent could be given little probative weight. The ALJ also noted that "remarks to management may be effected by a desire to curry the employer's favor." 250 NLRB at 588.

The ALJ's reservations concerning the probative value of Enloe's evidence were not unfounded. We will not attempt to comment on all of the evidence Enloe presents in support of its position. We may summarize by saying that in many instances the timing, and the context of Enloe's evidence justified the ALJ and Board in discounting the weight such evidence should be given. For instance, Enloe relies on anti-CNA remarks made by non-striking nurses during and shortly after the 1976 strike. These remarks are both remote in time and made in the emotionally-charged atmosphere of a strike; they are of little value in assessing support—or lack of it— for union representation. In addition, much of the testimony reporting pre-hire remarks by prospective employees was equivocal on the issue of union representation itself. Some prospective employees expressed feelings that union dues were too high. Others expressed their disapproval of striking. Such expressions cannot be equated with rejection of union representation, and the ALJ properly discounted the weight to be given this kind of testimony. *See NLRB v. Windham Community Memorial Hospital,* 577 F.2d 805, 813 (2d Cir. 1978).

■ Even assuming its reliability, Enloe's evidence did not support an inference of lack of support for CNA *representation.* Majority support means only that a majority of the unit desires representation by the union. *See Vegas Vic, Inc.,* 546 F.2d at 829. Union membership or the lack of it, though relevant, is by no means dispositive. *Pioneer Inn Associates v. NLRB,* 578 F.2d 835, 840 (9th Cir. 1978). It follows that expressions of lack of interest in actual union membership are similarly low in probative value. *Id.*

Thus, much of the evidence that Enloe points to as establishing "opposition" to CNA is not adequate to establish lack of majority interest in CNA representation. The ALJ was referring to this quality in the evidence, showing discontent with CNA, but perhaps no more, when he stated that "many an employee complains of his job without ever contemplating quitting." 250 NLRB at 588.

■ In light of the above, we hold that the ALJ and the Board's finding that Enloe failed to rebut the presumption of CNA's majority status is supported by substantial evidence. The General Counsel produced evidence to establish the presumption of CNA's majority status. Much of the evidence relied upon by Enloe was subject to the trial examiner's evaluation for credibility and weight, and taking the record as a whole, there lacked an "unequivocal" indication that "union support had declined to a minority." *NLRB v. Silver Spur Casino,* 623 F.2d at 579.

### C.

Enloe served a subpoena duces tecum on CNA, requiring CNA to bring to the hearing documents reflecting, among other things, the number of Enloe nurses who

were CNA members. CNA moved to revoke the subpoena on the grounds that the information sought was not relevant, and the ALJ granted CNA's motion. Enloe argues that this was error.

■ One of Enloe's defenses to CNA's unfair labor charge was CNA's actual lack of majority support; Enloe argues that the subpoena sought information directly relevant to that defense. In our view the information sought by the subpoena would have been relevant to this defense, but only marginally so. *See Silver Spur Casino*, 623 F.2d at 580; *NLRB v. Vegas Vic, Inc.*, 546 F.2d 828, 829 (9th Cir. 1976). Compare *Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 491 (2nd Cir. 1975), where the court went so far as to hold union membership information to be irrelevant. CNA lost its security clause in 1976, permitting employees to enjoy the benefits of CNA representation without having to pay the dues required of members. Thus, CNA membership could reasonably have been expected to decline regardless of employee satisfaction with CNA representation. This consideration, combined with the absence of other reliable indicia of employee discontent with CNA representation, leads us to conclude that if the ALJ and the Board erred in revoking the subpoena, any such error was harmless.

### D.

Enloe also argues that the ALJ and the Board failed to articulate the basis upon which the Board's decision rests as required by 5 U.S.C. § 557(c) (1966) and *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 443, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965).

The purpose of requiring the Board to articulate the basis for its decisions is to allow for proper judicial review of the administrative process. *Id.* at 444, 85 S.Ct. at 1064–65.

It is true that the ALJ opinion does not spell out the basis for its decision as clearly as we would like. But the opinion is complete enough and the bases for the decision plain enough for us to perform our task of reviewing the administrative decision-making process.

■ Enloe argued before the ALJ that it was privileged not to bargain because a hearing on its RM petition had been scheduled. *See* section II–A, *supra*. The ALJ's finding, affirmed by the Board, was that the "issuance of the notice of hearing and its cancellation does not result in the elimination of the unfair labor practice case." 250 NLRB at 588. The ALJ found that Enloe had failed to establish that it had "reasonable grounds on an objective basis for doubting the Union's majority." The basis of this finding, though not explicitly stated, is clearly implied: *Braun*'s outcome depended on litigation of the objective considerations. *Braun* did not establish an employer's privilege to refuse to bargain based merely on a pending hearing on an RM petition. We agree with this reading of *Braun*.

As to whether Enloe's doubt of majority status was based on objective considerations, see section II–B, *supra*. The basis for the ALJ's finding is clear. The ALJ properly enunciated the law, finding that CNA enjoyed a presumption of majority status, and that Enloe failed to carry its burden in rebutting that presumption. It is clear that the ALJ discounted as unreliable much of the testimony offered by Enloe. Our review indicates that the record supports the findings and conclusions of the ALJ and the Board.

The petition for review is denied. The order is enforced.