**ADAMS & WESTLAKE, LTD., a wholly owned subsidiary of Midwest Management Corp., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 86–1100.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1986.

Decided March 5, 1987.

---

Joel H. Kaplan, Seyfarth, Shaw, Fair-weather & Geraldon, Chicago, Ill., for petitioner.

Richard Cohen, N.L.R.B., Aileen A. Armstrong, N.L.R.B., Washington, D.C., for respondent.

Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

This case is a petition for review of a National Labor Relations Board (NLRB or Board) order denying an application for attorneys' fees and expenses made by Adams & Westlake, Ltd. (AWL or the Company) pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (Supp. III 1985). The Board found that the position taken by the NLRB's General Counsel was substantially justified. AWL challenges this order on a number of grounds. For the reasons set forth below, we affirm the Board's order.

## I

### Facts

#### A. *Background*

Adams and Westlake Company (Adlake) was an Elkhart, Indiana company that produced transportation sash and railway accessories. Until 1978, Midwest Management Corporation (Midwest) owned all of Adlake's stock. In that year, the controlling interest in Adlake passed to a single outside party, Mr. Richard Champlin. Tr. 279–80. Mr. Champlin served as president of Adlake from December 1978 to November 1982. During this time, "Midwest was effectively deprived of any control" of Adlake. *Adams & Westlake, Ltd.*, No. 25–CA–15316, Decision of ALJ at 3 (Apr. 5, 1984) [hereinafter cited as ALJ Decision of Apr. 5, 1984].

In 1982, Adlake began to suffer financial difficulties. In February of that year, it engaged in concession bargaining with the International Union United Automobile and Agricultural Implement Workers of America and its Local No. 1367 (Union). These negotiations resulted in a concession agreement concerning the reduction of wages and fringe benefits. On May 1, 1982, the parties agreed to extend their 1980–1982 contract, with modifications imposed by the concession agreement, for another two years until 1984.

After liquidating the assets used in two of its three product lines and failing to obtain more concessions from the Union, Adlake agreed, on October 28, 1982, to sell

---

[*] The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

its railway hardware product line to Midwest. Midwest later assigned its rights under the contract to a newly-formed, wholly-owned subsidiary, AWL, Ltd. (later renamed Adams and Westlake, Ltd.). The actual sales transaction was consummated on December 2, 1982. On the same date, Adlake formally terminated all of its employees.

On December 6, 1982, AWL commenced operations. Mr. Leroy Ott, who had served as Adlake's executive vice-president and general manager, was hired as general manager. A small workforce, completely composed of former Adlake employees, was hired. All of the materials produced by AWL had formerly been produced by Adlake. AWL used the same machinery and essentially the same vendors and sold these materials to essentially the same customers as Adlake. However, AWL used only a fraction of the space formerly used by Adlake because it was producing only one of the three product lines that Adlake had produced. Its production and maintenance employees were paid lower wages, received fewer benefits, and operated under different work rules than those provided for in the Adlake-Union contract.

■ In December 1982, Union representative, James Kurtz sent a letter to Mr. Ott requesting information from which the Union could make a determination whether AWL was an alter ego or a successor to Adlake.[1] Mr. Ott forwarded the letter to Frank Krok, Midwest's president. Mr. Krok furnished the requested information and stated that, in his opinion, AWL was not the alter ego of Adlake. Mr. Kurtz, the union representative then telephoned Mr. Ott on January 7, 1983 to obtain additional information. In testimony specifically credited by the ALJ, Mr. Kurtz stated

that Mr. Ott told him that AWL planned to talk with the Union that had represented the clerical employees at Adlake. ALJ Decision of Apr. 5, 1984 at 5 n. 3. Mr. Kurtz asked, "Well, then, what about us?" Ott replied, "I expect that we should sit down and talk some time." Tr. 161. On January 17, 1983, the Union requested that the Company recognize and bargain with the Union. On February 7, Mr. Krok informed the Union that he had been advised by counsel that he was not obligated to bargain with it.

### B. *The Unfair Labor Practice Charge*

On February 23, 1983, the Union filed unfair labor practice charges with the Board alleging that the Company had violated section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by failing to honor a collective bargaining agreement and by failing or refusing to bargain collectively with the Union. On March 23, 1983, the Company responded to these charges with a statement of position. The majority of the statement addressed whether the Company was an alter ego or successor of Adlake. The Company also raised, for the first time, the defense that it had a good faith doubt regarding whether a majority of its employees desired the Union's representation. The Company also filed an "RM petition,"[2] seeking an election among AWL's employees because of the Company's doubt as to the majority status of the Union. In its position statement, the Company based its good faith doubt defense upon five reasons, only one of which is important here: that General Manager Ott had had conversations with at least half the employees of AWL, and that, during these conversations,

---

1. If the Company had been determined to be an alter ego to Adlake, it would have been bound by the collective bargaining agreement Adlake had entered into with the Union. If the Company were determined to be a successor to Adlake, it would have been obligated to recognize and bargain with the Union, absent a good faith doubt as to the Union's continued majority status. *See NLRB v. Tricor Prod., Inc.,* 636 F.2d 266, 269–70 (10th Cir.1980).

2. 29 U.S.C. § 159(c)(1)(B) provides that an employer may file a petition with the Board to clarify "questions of representation" if such petition alleges "that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative" for collective bargaining purposes. *See also* 29 C.F.R. § 101.17 (1986). *See generally NLRB v. Financial Inst. Employees of Am., Local No. 1182,* 475 U.S. 192, 106 S.Ct. 1007, 1011–13, 89 L.Ed.2d 151 (1986).

the employees indicated to Mr. Ott that they did not want Union representation.[3] In response to a request for more information, AWL sent another letter to the Board summarizing the contents of the conversations between Mr. Ott and seven AWL employees. AWL also permitted a Board agent to interview Mr. Krok and Mr. Ott.

The Regional Director, acting on behalf of the General Counsel, issued a complaint and notice of hearing alleging violations of section 8(a)(1) and (5) of the National Labor Relations Act for unlawful failure and refusal to bargain collectively with the Union. A hearing was held on September 27 and 28, 1983. At this hearing, General Manager Ott testified as to the substance of conversations he had had with eight Company employees. Mr. Ott's testimony regarding his conversations with seven of the employees was "virtually identical" to the information presented in the April 4, 1983 letter from AWL to the Regional Director. The General Counsel made no attempt to impeach Mr. Ott's testimony or to call any of the named employees to rebut that testimony.

C. *The Decision of the ALJ in the Underlying Litigation*

On April 5, 1984, the ALJ issued a decision. Initially, he determined that AWL was the successor of Adlake. ALJ Decision of Apr. 5, 1984 at 9–12. Therefore, the ALJ found that AWL:

> would be obligated to recognize and bargain with the Union after staffing its operation with former Adlake employees, absent a showing that it refused to recognize and bargain with the Union because it had a good-faith doubt that the Union enjoyed majority status among its

employees on January 17, 1983, the date of the union's demand for recognition. *Id.* at 12.

As noted earlier, the company presented five reasons why it entertained a good faith doubt as to the Union's continued majority status, only one of which—statements made by seven or more employees to Mr. Ott that they desired not to be represented by the Union—was sufficient, according to the ALJ, to establish an objective, good faith doubt as to the majority status of the Union. The ALJ had earlier described Mr. Ott "as one who sought to tailor his testimony to fit the needs of Respondent's defense." *Id.* at 5 n. 3. Nevertheless, with respect to these conversations, the ALJ chose to credit Mr. Ott's testimony because Mr. Ott gave it in "a straightforward manner, was not confused on cross-examination, and appeared to be telling the truth." *Id.* at 14–15 n. 8. In so holding, the ALJ rejected the General Counsel's argument that AWL's delay in raising the good faith doubt defense was evidence of an after-the-fact fabrication of that defense. The ALJ also noted that the General Counsel did not attempt to controvert Mr. Ott's testimony, *id.*, and that the "General Counsel failed to rebut such testimony." *Id.* at 15. No exceptions were filed by the Board to the ALJ's order and the Board adopted the order as its own. *Adams & Westlake, Ltd.*, No. 25–CA–15316 (N.L.R.B. May 24, 1984).

D. *The Fee Application*

1. The Application of AWL

AWL filed an application for fees, costs, and expenses under the EAJA. In its original form, the application questioned many aspects of the General Counsel's handling of the litigation.[4] In pertinent part, AWL

---

**3.** AWL's other four reasons were: 1) that no election had ever been held to determine whether the Union was a majority union (Adlake had voluntarily recognized the labor organization that represented the production and maintenance workers, and that organization later merged with the Union); 2) that the Union had not collected dues from any former Adlake employees since June 1982; 3) that four employees had taken withdrawal cards from the Union; and 4) that acts committed by Union officials

with regard to limited job openings after most of the Adlake employees had been laid off, had caused many former Adlake employees to become very disenchanted with the Union. For various reasons, the ALJ found that AWL could not properly rely on these four reasons to support a good faith doubt defense. *Adams & Westlake, Ltd.*, No. 25–CA–15316, Decision of ALJ at 12–14 (Apr. 5, 1984).

**4.** *See Adams & Westlake, Ltd.*, No. 25–CA–15316(E), Decision of ALJ at 2–3 (Aug. 20, 1984)

submitted that the Regional Director was not substantially justified in issuing a complaint after he had received AWL's statement of position setting forth its good faith doubt defense, that the General Counsel was not substantially justified in proceeding to a hearing without interviewing any of the employees named in AWL's letters,[5] and that the General Counsel was not substantially justified in proceeding to a decision once Mr. Ott had testified because the General Counsel could not rebut this testimony.

AWL had also argued that the Regional Director was not substantially justified in refusing to process AWL's "RM" petition. The ALJ indicated that his finding of substantial justification regarding the issuance of the complaint was sufficient to resolve that question.[6]

### 2. The Decision of the ALJ

With respect to the issuance of a complaint, the ALJ held that the Regional Director was substantially justified because the evidence established that AWL was a successor to Adlake. *Adams & Westlake, Ltd.*, No. 25–CA–15316(E), Decision of ALJ at 5 (Aug. 20, 1984) [hereinafter cited as ALJ Decision of Aug. 20, 1984]. Next, the ALJ found that the General Counsel was substantially justified in proceeding to a hearing because it was not the General Counsel's responsibility to establish AWL's affirmative defense. The ALJ also held that it was proper for the General Counsel to require AWL to establish its defense through sworn testimony because AWL had not made Mr. Ott or the other employees available to the NLRB's investigators. With respect to the post-hearing period, the ALJ found that the General Counsel was substantially justified in continuing to a decision after Mr. Ott had testified for several reasons: 1) the General Counsel argued in her post-hearing brief that Mr. Krok rather than Mr. Ott had made the decision to refuse to bargain with the Union and as to Mr. Krok, Mr. Ott's conversations were hearsay upon which AWL was not entitled to rely; 2) the General Counsel argued (and the ALJ agreed as to one employee) that not all of Mr. Ott's conversations clearly demonstrated the employee's desire not to be represented by the Union (if such a finding had been made as to another employee, AWL's good faith doubt defense would have failed); and 3) that the Board's decision in *Sofco, Inc.*, 268 N.L.R.B. No. 159 (1983), decided subsequent to the hearing but prior to the decision on the underlying claim, changed the evidentiary standard applied in good faith doubt cases. The ALJ stated that AWL's good faith doubt defense presented a

---

[hereinafter cited as ALJ Decision of Aug. 20, 1984].

5. AWL argues basically that the Regional Director could not have been substantially justified in issuing a complaint, and that the General Counsel could not have been substantially justified in proceeding to a hearing and decision, without having first conducted an adequate investigation. Furthermore, it argues that an adequate investigation would have necessarily involved interviewing at least some of the employees named in AWL's statement of position. Finally, it argues that the General Counsel's failure to offer testimony from any of the named employees (to rebut Mr. Ott's testimony) demonstrates the inadequacy of the investigation undertaken by the Region because it suggests either that the General Counsel never contacted any of these employees, or possibly, that the General Counsel contacted some of these employees and they corroborated Mr. Ott's account, and that the General Counsel proceeded anyway. *See* Petitioner's Br. at 38 & 43 n. 24.

6. AWL also raised the following challenges to the General Counsel's post-trial conduct: 1) the General Counsel treated AWL's good faith doubt defense in "perfunctory" fashion in its post-hearing brief; 2) the General Counsel made blatantly inaccurate statements of fact in its post-hearing brief; and 3) the General Counsel did not file exceptions to the dismissal of the complaint in its entirety. ALJ Decision of Aug. 20, 1984 at 7–8.

AWL argued further that the Regional Director was not substantially justified in postponing the hearing from July 18 to September 27, 1983. The ALJ accepted the General Counsel's explanation that a new charge had been filed with the Region (alleging unlawful refusal to hire certain Union officers), and that to avoid multiple trials, it was necessary to postpone the hearing until the related charges were investigated. Based on this explanation, the ALJ found that the Regional Director's decision to postpone the hearing was substantially justified. *Id.* at 7.

"close factual issue," and that, but for *Sofco,* he probably would have resolved it in the General Counsel's favor. ALJ Decision of Aug. 20, 1984 at 7.

#### 3. The Decision of the Board

The Board issued a supplemental decision and order adopting the ALJ's recommended order. 277 N.L.R.B. No. 135 (Dec. 23, 1985). However, in a footnote, the Board specifically declined to adopt either the ALJ's discussion of the *Sofco* case or his finding that AWL had failed to make Ott or other employees available for the Region's investigator to interview. *Id.* at 1–2 n. 1. The Board adopted the ALJ's recommended order because it agreed that AWL's duty to bargain turned largely on the close factual issue of whether AWL had a good faith doubt, based on objective evidence, that the Union no longer enjoyed majority status. This issue, the Board noted, rested largely on the credibility of Mr. Ott. Furthermore, the Board noted that, in her post-hearing brief, the General Counsel vigorously attacked Mr. Ott's testimony that he entertained a good faith doubt as to the majority status of the Union at the time of the demand for recognition.

## II
## The Merits

### A. *The Governing Standard*

In its petition for review, AWL argues, for several reasons, that the Board erred in finding that the General Counsel's position in this case was substantially justified.[7] This court has held that the position of an agency is substantially justified if it has a reasonable basis in both law and fact. *Phil Smidt & Son, Inc. v. NLRB,* 810 F.2d 638, 641–42 (7th Cir.1987); *Temp Tech Indus., Inc. v. NLRB,* 756 F.2d 586, 590 n. 4 (7th Cir.1985). As the parties note, this court may modify the Board's determination that AWL is not entitled to an award of fees and expenses only if we find that

this determination was "unsupported by substantial evidence" on the record. 5 U.S.C. § 504(c)(2) (Supp. III 1985); *see Phil Smidt & Son,* 810 F.2d at 641.

### B. *Application of the Standard*

In this court, AWL argues, as it must, that the Board's determination that the General Counsel's position was substantially justified is unsupported by substantial evidence on the record. It submits, in essence, that it established its good faith doubt defense beyond dispute. It also argues that the ALJ's determination erroneously rested on the findings that Mr. Ott's credibility presented a "close factual issue" and that the Company's delay in filing an RM petition was arguably evidence of an after-the-fact fabrication of the Company's good faith doubt defense. Finally, it argues that the General Counsel failed to make an adequate investigation of the Company's defense before proceeding.

In beginning our analysis, we note that the first issue that had to be resolved in the Board proceedings was whether AWL was an alter ego or successor to Adlake. On this basic issue, the General Counsel prevailed and AWL was found to be a successor. ALJ Decision of Apr. 5, 1984 at 12. Once it was established that AWL was a successor company, the General Counsel was entitled to rely on the presumption that the Union continued to enjoy majority status. *See NLRB v. Jarm Enter., Inc.,* 785 F.2d 195, 205–06 (7th Cir. 1986); *Orion Corp. v. NLRB,* 515 F.2d 81, 84 (7th Cir.1975). It became the Company's burden to establish, through clear, cogent and convincing evidence, a reasonable, objective basis upon which it could base a good faith doubt that the Union no longer enjoyed the support of a majority of the Company's employees. *Hotel, Motel & Restaurant Employees & Bartenders Union Local No. 19 v. NLRB,* 785 F.2d 796, 798–99 (9th Cir.1986); *N.T. Enloe Memori-*

---

7. As we said in *Phil Smidt & Son, Inc. v. NLRB,* 810 F.2d 638 (7th Cir.1987): "The 'position of the agency' which must be substantially justified is not just the legal position which the government took in the underlying litigation but also

the action which led to the litigation." *Id.* at 641 (footnote omitted). *See also K & I Transfer & Storage, Inc. v. NLRB,* 805 F.2d 749, 752 (7th Cir.1986).

al Hosp. v. NLRB, 682 F.2d 790, 794 (9th Cir.1982); Orion Corp., 515 F.2d at 85.

AWL submits that this burden was met when the General Counsel failed to take steps to rebut or to impeach the testimony of Mr. Ott that his conversations with eight [8] workers established a good faith doubt as to whether the Union still commanded a majority. Indeed, it submits, there was no justification for the General Counsel to continue to take the position that the Union still commanded a majority when it was unprepared to discredit Mr. Ott's testimony.

■■■ This contention cannot be evaluated in the abstract; it must be reviewed in the context of the particular industrial relations situation in which it arose. The General Counsel is obliged to enforce the provisions of the National Labor Relations Act—including those which deal with the determination of bargaining representatives. In deciding whether to prosecute a complaint alleging an unfair labor practice, the General Counsel must evaluate the situation in light of her expertise in labor relations.

■■ Here, the General Counsel faced a situation where the available evidence certainly permitted a reasonable and informed determination that enforcement of the Act required that the matter be scrutinized by the adjudicative machinery of the Board. While no testimony other than Mr. Ott's was apparently available,[9] the *quality* of his testimony was certainly not a "given." In determining whether the members of a bargaining unit remain committed to their present representation, the testimony of a general manager as to conversations between himself and individual employees regarding each employee's continuing satisfaction with the Union need not be considered controlling. Indeed, other courts

have noted that similar testimony may be suspect. See, e.g., NLRB v. Middleboro Fire Apparatus, Inc., 590 F.2d 4, 9–10 (1st Cir.1978); NLRB v. Tahoe Nugget, Inc., 584 F.2d 293, 306 (9th Cir.1978), cert. denied, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979); Rohlik, Inc., 145 N.L. R.B. 1236, 1241–42 (1964). Here, the General Counsel could reasonably have had specific reservations about Mr. Ott's evaluation of the situation. While the ALJ did credit his testimony at the hearing, a pretrial evaluation to the contrary cannot be faulted in light of the ALJ's pointed characterization of Mr. Ott as "one who sought to tailor his testimony to fit the needs of Respondent's defense." ALJ Decision of Apr. 5, 1984 at 5 n. 3.

■■ Moreover, as the General Counsel indicates, the good faith doubt defense involves not only showing a basis for doubting the majority status of the Union, but also showing that this basis existed *at the time of the refusal to bargain.* See, e.g., NLRB v. Flex Plastics, Inc., 726 F.2d 272, 275 (6th Cir.1984); N.T. Enloe Memorial Hosp., 682 F.2d at 794; Orion Corp., 515 F.2d at 85. The testimony of Mr. Ott and Mr. Krok could have raised at least some doubt as to when, how, and why the good faith defense arose. Tr. 96–97, 102–07; 352, 355–58. Their testimony could lead one to infer that the decision not to recognize the Union was made by Mr. Krok even before he knew (according to Mr. Ott's testimony) about Mr. Ott's conversations with the employees. The General Counsel could reasonably have believed—and did reasonably argue—that, based upon the facts in this record, the good faith doubt defense was fabricated subsequent to the demand for recognition. See NLRB v. King Radio Corp., 510 F.2d 1154, 1157 (10th Cir.), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975). That argu-

---

**8.** AWL's original statement of position listed seven employees who had indicated some type of dissatisfaction with (if not the lack of desire to be represented by) the Union to Mr. Ott. At the hearing, Mr. Ott testified that eight employees had communicated such sentiments to him.

**9.** AWL argues that the General Counsel failed to conduct an adequate investigation prior to pro-

ceeding in this case. Here AWL bore the burden of proof on the good faith doubt issue. Unlike the situation in *Phil Smidt & Son,* where as a result of the Board's investigation, the Board possessed documentation that negated its theory, the Board simply had the self-serving statement of one of the litigants that was inherently suspect.

ment was not dependent on a direct challenge to the substance of Mr. Ott's conversations with the AWL employees. Indeed, the General Counsel emphasizes that, in the contacts between the Company and the Union, prior to its answer to the General Counsel's complaint, the Company never raised the question of the Union's majority status. Furthermore, when the defense was raised, it was given much less attention than the defense that the Company was neither an alter ego nor a successor to Adlake.

Finally, a reasonable argument was made, again without attacking the substance of Mr. Ott's testimony, that the nature of a given employee's statement was insufficient to provide the Company with a basis to believe that the employee no longer desired Union representation. *See, e.g., NLRB v. Top Mfg. Co.*, 594 F.2d 223, 224–25 (9th Cir.1979). Based upon the letter the Company sent to the General Counsel, if any one of the statements were shown to be insufficient, the good faith doubt defense would have failed because the Company would have a showing of less than 50% of its employees. To establish its good faith doubt defense, AWL had to show that a majority of the employees in the relevant bargaining unit had indicated that they no longer desired to be represented by the Union. *Hotel, Motel & Restaurant Employees & Bartenders Union*, 785 F.2d at 799; *Bellwood Gen. Hosp., Inc. v.¹ NLRB*, 627 F.2d 98, 102 (7th Cir.1980); *Orion Corp.*, 515 F.2d at 85. The relevant bargaining unit consisted of fourteen employees. ALJ Decision of Apr. 5, 1984 at 6. AWL's original position statement named seven employees who had made the required statements. At the hearing, Mr. Ott testified as to conversations he had had with eight employees. *Id.* at 15. The ALJ found that the statements made by only seven of these employees provided a sufficient basis upon which AWL could rely to assert its good faith doubt defense. If the ALJ had accepted the General Counsel's argument that other statements were insufficient, AWL's defense would have failed because it could not have shown that at least 50% of the employees in the rele-

vant bargaining unit had expressed a desire for termination of Union representation.

The Company's argument regarding the filing of the RM petition is also unpersuasive. The Company cites a case in which the court held that the filing of an RM petition is not relevant in establishing the existence of a good faith doubt on the part of the employer. Petitioner's Br. at 31 (citing *Top Mfg.*, 594 F.2d at 225). However, the Company has cited no authority for the proposition that the failure to file an RM petition, or the belated filing of an RM petition, is not relevant to the question of whether the Company has fabricated its good faith doubt defense subsequent to its refusal to bargain. Because there is no authority on the question presented, it is not unreasonable for the General Counsel to disagree with the Company.

We hold that the evidence in the record before this court supports the Board's determination that the position of the General Counsel in this case was substantially justified. Accordingly, we affirm the Board's order dismissing AWL's application for an award under the EAJA.

AFFIRMED..