**RUSSELL, Christine, Appellant,**

v.

**HECKLER, Margaret.**

No. 86–1281.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1986.

Decided March 20, 1987.

---

Arnold F. Laikin (argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Chief, Civil Div., Charisse R. Lillie, Asst. U.S. Atty., Beverly Dennis, III, Chief Counsel, Region III, James C. Newman, Supervisory Asst., Regional Counsel, James A. Tinnyo (argued), Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges and FARNAN, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Christine Russell appeals the district court's denial of her motion for an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (Supp. III 1985). Russell seeks compensation for attorney's fees and costs incurred during judicial review of the decision by Secretary Heckler of the Department of Health and Human Services not to waive recoupment of social security benefit overpayments made to Russell. Russell also seeks compensation for attorney's fees and costs incurred in litigating this fee petition. The liability of the United States turns on whether the Secretary's positions on recoupment and this fee petition were "substantially justified" as that phrase is used in the EAJA.[1] 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985).

The Social Security Act states that overpayments are not to be recouped if the recipient is "without fault" and certain other requirements are met. 42 U.S.C. § 404(b) (1982). In the first instance, the administrative law judge (ALJ) found that Russell was "not without fault" and thus that recoupment of the overpayment could not be waived. App. at 14. The Appeals Council summarily affirmed the ALJ's deci-

sion, finding substantial evidence that Russell was at fault. The district court concluded that the Social Security Administration (SSA) could not recoup the overpayment because the ALJ's findings were not supported by substantial evidence that Russell was at fault. On the petition for attorney's fees, however, the district court determined that the position taken by the SSA, although rejected by the court, was "substantially justified," and therefore concluded that the United States was not liable for Russell's attorney's fees under the EAJA. 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). We reverse, finding that Russell is entitled to an award of attorney's fees and costs with respect to both the recoupment proceedings and this fee petition.

### I.

The Secretary's position in the recoupment proceeding was that Russell "should have known" her institutionalized son Michael was not "in her care," and therefore Russell was "not without fault" in failing to report her ineligibility to the SSA and in accepting the overpayments. In order to determine whether this position is substantially justified, and thereby evaluate Russell's claim for attorney's fees and costs, it is necessary to consider the law and facts relevant to the underlying recoupment proceedings.

### A.

Section 204(b) of the Social Security Act provides:

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

---

* Honorable Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation.

1. The attorney's fee section of the Social Security Act, 42 U.S.C. § 406(b) (1982), is not applicable to fees incurred in resisting recoupment of overpayments of social security benefits.

42 U.S.C. § 404(b) (1982). In order to show that the recipient was at fault under the SSA regulations, the facts must show that the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect. .

20 C.F.R. § 404.507 (1986).[2]

### B.

Appellant Christine Russell's husband, James Russell, died in July of 1974. The Russells were the parents of two surviving sons: James Gary, then 15, who lived with his mother; and Michael Russell, then 9, who was mentally retarded and lived in a nursing home under the custody of the State of Pennsylvania. Although Christine Russell did not pay for Michael's care, she was consulted about his welfare and activities.

After her husband's death, Christine Russell applied to the SSA for mother's insurance benefits, surviving child's insurance benefits and benefits on behalf of another—her institutionalized son Michael. To qualify for mother's insurance benefits, an applicant must have at least one child in her care. To be named as payee for a child's benefits, the child must be in the care of the applicant.

The SSA benefit application forms refer to the requirement that there be a child "in your care." For example, the application form for receipt of benefits on behalf of another states: "Do you agree to notify the Social Security Administration promptly when you no longer have responsibility for the welfare and care of any person for whom you receive payments?" App. at 76. The application for mother's insurance benefits states:

> You may receive a mother's benefit for any month in which you have in your care a child or dependent grandchild of the deceased entitled to a child's insurance benefit because he (she) is:
>
> —under age 18, or
>
> —disabled or handicapped (age 18 or over and disability began before age 22)

App. at 66. It also explains that:

> YOU MUST NOTIFY THE SOCIAL SECURITY ADMINISTRATION PROMPTLY IF:
>
> —You MARRY
>
> —You NO LONGER HAVE IN YOUR CARE a child or dependent grandchild of the deceased entitled to benefits because he (she) is under 18 or disabled.

App. at 68. None of the application forms, however, explains what "in your care" means in the context of an institutionalized child or in any other context.

The regulations defining "in your care" during the relevant period are set forth in the margin.[3] It is undisputed at this point

---

**2.** The regulations also state that recoupment will defeat the purpose of the Social Security Act if it will "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508 (1986). The Secretary did not take a position before the district court on the issues of whether recoupment would defeat the purposes of the Act or would be consistent with equity and good conscience. Russell was overpaid $8,338.50. Her only cash income at the time of the hearing was $43 per week in state assistance.

**3.** Between 1974, when Russell applied for benefits, and 1981, when benefits were terminated, the regulatory definition of "in your care" was amended several times, but none of these changes were pertinent to whether Michael was

in Russell's care. In 1974, the relevant regulations, 20 C.F.R. §§ 404.342, 404.343, 404.348, and 404.349 (1974), provided:

**§ 404.342 In her care.**
For purposes of §§ 404.313, 404.335, and of Subpart E, a mother (whether a wife, widow, or surviving divorced mother) has a child in her care if she exercises parental control and responsibility for the welfare and care of a child under age 18, or of a child age 18 or older who is mentally incompetent. If the child is age 18 or older and mentally competent, "in her care" means that the mother is performing personal services for the child.
**§ 404.343. In her care; exercising parental control and responsibility.**
For purposes of § 404.342:
\* \* \* \* \* \*

that Michael was not in Russell's care within the meaning of these regulations in 1974 or thereafter.

When Russell visited the SSA office to apply for benefits, she explained to the interviewing SSA employee that Michael was living in a nursing home, that he had been a "ward of the state" since 1967, and that she was "allowed to bring him home for an occasional week" but that she saw him only rarely. App. at 74–76. She was told by the SSA employee that Michael was eligible for benefits and that she was eligible for mother's insurance. The employee filled out the necessary applications setting forth the above disclosures and Russell signed each of the forms without reading them. While Russell apparently understood that she was eligible to receive Michael's benefits only if he was in her care, there is no evidence that the "in your care" requirement was explained to her by the SSA employee who filled out the application and Russell remained unaware of the regulatory definition of that phrase. When Russell left the SSA Office, she believed that Michael was sufficiently in her care to be entitled to benefits. This impression

was confirmed when she received benefits as the payee for Michael.

James turned 18 on July 6, 1977. Because Michael was not in her care, Christine Russell became ineligible for mother's insurance on that date and had an obligation to notify the SSA. Russell did not notify the SSA of this change in status because she believed that Michael was in her care. Russell received mother's insurance benefit checks between July 1977 and July 1981, when the SSA terminated her benefits, in the total amount of $8,338.50.[4]

The SSA sought recoupment of this $8,338.50 overpayment. Russell did not argue that she was entitled to these benefits, but argued instead that recoupment should be waived in her case because she was "without fault" in receiving the overpayments. Russell's application for a waiver was denied. Russell requested and received a hearing on the recoupment issue before an administrative law judge. The ALJ's factual findings focused primarily on the use to which Russell put the benefits paid to her on behalf of her son Michael. The ALJ also found, however, that by signing the application for receipt of benefits

(b) Parental control and responsibility may be exercised directly or, where the mother and child are apart, it may be exercised indirectly. The fact that the mother has not lost the legal right to the child's care and custody, and retains the right to exercise parental control and responsibility, does not constitute the exercise of such parental control and responsibility even if she furnishes the child's food, clothing, and shelter or makes provision therefor.

§ 404.348. In her care; mother and child not living together; separation expected to be indefinite or to exceed 6 months.

(a) *General.* Where the mother and child are not living together and the separation will be for an indefinite period, or is not expected to end within 6 months, the mother is exercising parental control and responsibility for the care and welfare of the child only under the conditions described in paragraphs (b), (c), (d), and (e) of this section. If the child resumes living with the mother before the end of 6 months, the provisions of § 404.347 are applicable in determining whether the mother has the child in her care.

\* \* \* \* \* \*

(e) *Mother and child not living together; child mentally incompetent.* Where mother and child are not living together (regardless

of reason), and the child is mentally incompetent, and the mother is exercising parental control and responsibility if she supervises the activities of the child, participates in the important decisions about the child's physical and mental needs, and measurably controls the child's upbringing and development.

§ 404.349 In her care; when a mother does not have a child in her care.

Notwithstanding the provisions in §§ 404.342–404.348, a mother does not have a child in her care, for purposes of this subpart or Subpart E, if:

(a) The child is in the armed forces; or

(b) The mother and child are not living together and either:

(1) The child is living with the father; or

(2) The mother is mentally incompetent; or

(3) The child was removed from the mother's custody and control by a court order; or

(4) The mother has relinquished her right to custody and control of the child to some other person or agency; or

(5) The separation is for a period of more than 6 months, and the child is age 18 or older and is mentally competent.

4. The Secretary sought recoupment of only mother's insurance benefit overpayments. *See* App. at 97–101.

on behalf of another, Russell "indicated her understanding that she would be required to notify the Administration of any changes in her beneficiary status." App. at 13. On the basis of these factual findings, the ALJ concluded that Russell was "not without fault." The ALJ therefore decided that recoupment could not be waived.

Russell asked the Appeals Council to review the ALJ's decision. The Appeals Council "acknowledge[d] that it was by and large unnecessary for the Administrative Law Judge, in his decision, to discuss the use to which" Russell put the funds she has received. App. at 3. The Appeals Council denied the request for rehearing, however, because it found that there was substantial evidence that Russell was not without fault, relying specifically on the fact that Russell signed the three application forms. Thus, the ALJ's determination that Russell was not without fault stood as the final decision of the Secretary.

Russell sought judicial review of the Secretary's determination. In the district court, the Secretary argued that substantial evidence in the record supported the conclusion that Russell was not without fault. In particular, the Secretary asserted that the signed application forms stating that recipients are required to notify the SSA when they no longer have in their care a child under 18 or disabled were sufficient basis for finding that Russell "should have known" and reported that she was ineligible as of July 1977. The district court rejected this position and entered summary judgment for Russell. The district court later denied Russell's motion for attorney's fees under the EAJA, finding that the Secretary's position was "not unreasonable" and therefore was "substantially justified." Memorandum Opinion at 9, 11.

The district court had subject-matter jurisdiction over the underlying matter under 42 U.S.C. § 405(g) and over the request for fees under 28 U.S.C. § 2412. This court has appellate jurisdiction to review the final order of the district court denying attorney's fees under 28 U.S.C. § 1291.

## II.

The initial question is whether the district court erred in denying Russell's motion for attorney's fees. Our review of the district court's determination that the Secretary's position was substantially justified is plenary. *Washington v. Heckler*, 756 F.2d 959, 963 (3d Cir.1985).

## A.

The Equal Access to Justice Act provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985).[5] The Secretary argues that her position was "substantially justified." [6]

This court summarized the law regarding substantial justification in *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir.1985) (citations omitted):

> Substantial justification "constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." The burden of proving substantial justification is on the government. To meet its burden, the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the

---

**5.** This section was repealed on October 1, 1984. The section was revived and made effective with respect to all litigation pending or initiated on or after August 5, 1985. Pub.L. No. 99–80 §§ 6, 7, 99 Stat. 183, 186 (1985). Russell's petition for review of the Secretary's determination was pending in the district court on that date.

**6.** The Secretary does not argue that there were "special circumstances" in Russell's case that render an award unjust. *See Brinker v. Guiffrida*, 798 F.2d 661, 667–68 (3d Cir.1986).

theory it propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced. The government's burden of showing substantial justification is a strong one and is not met merely because the government adduces "some evidence" in support of its position.

After *Washington* was decided, Congress revived the EAJA, which was repealed in 1984, and in doing so clarified the meaning of "substantially justified." The House Report accompanying that legislation took the following positions which are highly relevant in the present context:

> Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. *Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.*
>
> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. *Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.*

H.R.Rep. No. 120, 99th Cong., 1st Sess. 9–10, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138 (emphasis supplied; footnotes omitted). *See Stokes v. Bowen,* 811 F.2d 814 (3d Cir.1987).

In *Washington v. Heckler,* this court held that a legal position is substantially justified if it relates to an unsettled or close question of law, but not if it clearly offends established precedent. 756 F.2d at 961–62. This court recently found this test to be consistent with the Congressional direction not to apply a "mere reasonableness" test. *Lee v. Johnson,* 799 F.2d 31, 38 n. 7 (3d Cir.1986). "Therefore, for the government, in relying entirely upon a legal argument, to establish that its position was substantially justified, it must demonstrate that that argument presented an unsettled or close question of law." *Id.* at 38.

### B.

The Secretary bears the burden of presenting a basis for her position in both fact and in law. Here, there is no dispute about the relevant primary facts. The record establishes that Russell signed but did not read the application forms. Nevertheless, she understood that she was eligible for benefits only if she had a child in her care. Russell did not know the regulatory definition of the "in your care" requirement as applied to her relationship with Michael, and it was not explained to her. The oral advice Russell received at the SSA office and the SSA's approval of Russell as Michael's representative payee led her to believe that he was indeed in her care.

The Secretary's legal position in the recoupment proceeding was succinctly stated in the following segment of her district court brief in the recoupment proceedings:

> The Secretary is justified in requiring that plaintiff have read the application and know the simple conditions under which she received benefits, *i.e.,* that she have a child of decedent under age 18 in her care. Additionally, the Secretary can require plaintiff to follow the clear instructions given on the application that plaintiff inform SSA when she no longer met those conditions. The Secretary believes, therefore, that she properly can impute to plaintiff knowledge of plaintiff's obligation after July 1977 to report the fact that she no longer had a child of decedent under age 18 in her care. The Secretary can also impute to plaintiff knowledge of her agreement to make such a report and return any benefit checks to which she was not entitled.

Brief in Support of Defendant's Motion for Summary Judgment at 6.

For present purposes we may assume, without deciding, that the Secretary was substantially justified in contending that the recipients of benefits should be held to know that which is disclosed in the benefit application. This does not aid the Secretary because even with this assumption, there is a lack of substantial evidence to support the Secretary's ultimate finding that Russell was at fault. The applications told her only that she would remain eligible only so long as she had a child in her care and that she had a duty to report when this was no longer the case. Moreover, this limited advice was not the only information tendered to Russell by the SSA in connection with her 1974 applications for benefits and cannot be evaluated in isolation. The oral advice that Russell received from SSA office representatives and the message that she received from the Agency's approval of the application in which she had disclosed the relevant facts regarding Michael's situation were reasonably taken by Russell as an application of the "in your care" concept to the specific facts of her case. We reject the Secretary's implicit contention that Russell should have perceived an irreconcilable conflict between the Agency's apparent interpretation of its own requirements and the otherwise unexplained phrase "in your care."

■ Assuming that Russell was without fault in 1974 in understanding that Michael was in her care, as we find she clearly was, we fail to see how the Secretary can be substantially justified in maintaining that she was "at fault" on and after July 6, 1977 when the only change of circumstance on that date was that Russell reasonably understood she had only one child in her care rather than two. The Secretary's own regulations provide that a recipient failing to report an event because of reliance on statements of Social Security personnel is without fault. 20 C.F.R. § 404.510a (1977) ("Where an individual ... accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration

... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, ... such individual, in accepting such overpayment, will be deemed to be 'without fault.' "). This is the substance of what occurred in this case and we, accordingly, conclude that the district court was correct in holding that the Secretary's position in the recoupment proceeding was unsupported by substantial evidence. Given that there are no "extraordinary special circumstances" here, it follows that the Secretary's position was not "substantially justified" as Congress intended that concept to be applied. H.R.Rep. No. 120, 99th Cong., 1st Sess. 10, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138.

At times the Secretary seems to be making the additional legal argument that a recipient of benefits is charged with knowledge of the regulations. If this were a tenable proposition of law, the Secretary's contention that Russell was "at fault" would have been substantially justified. The Secretary cites no authority for this proposition, however, and, far from representing an "unsettled or close question of law," we believe it is clearly refuted by the statute and regulations themselves. As the court explained in *Cucuzzella v. Weinberger,* 395 F.Supp. 1288, 1295 (D.Del. 1975):

> The [statute and] regulations dealing with repayment presuppose that there will be situations in which improper payments are received and retained and the recipient is nevertheless not at fault. Accordingly, it is clear that recipients are not always to be deemed to have knowledge of the law or to be charged with negligence for failure to know it.

In *Kendrick v. Califano,* 460 F.Supp. 561, 571–72 (E.D.Va.1978), the court, taking a similar view, held that the Secretary cannot arbitrarily assume that a claimant understood the application of the Social Security law to his particular situation. *See also Davidson v. Harris,* 502 F.Supp. 1208, 1214 (E.D.Pa.1980) (a recipient cannot be deemed to know and understand regulations simply because she can read and write).

In short, Section 404(b) of the statute and its implementing regulations cannot be reconciled with the Secretary's apparent contention that recipients of benefits must be held to know the law. Accordingly, this contention was not substantially justified. Since, under any other view of the law, there was no substantial evidence to support a contention that Russell was at fault, we hold that the Secretary's position in the recoupment proceeding was not "substantially justified" within the meaning of the EAJA.

## III.

When the United States opposes a fee petition under the EAJA and its opposition is not "substantially justified," the petitioner may recover the attorney's fees and costs incurred in litigating the fee petition. *Lee v. Johnson*, 799 F.2d at 39. Where the opposition of the government is not based solely on a contention that its position in the underlying proceeding was substantially justified, an application for fee petition expenses can present issues not resolved by the proceedings on the original fee petition. *See, e.g., Lee v. Johnson*, 799 F.2d at 39–40. Where the sole basis for the opposition is the alleged substantial justification of the government's position in the underlying proceedings, however, the petitioner will almost always, if not always, be entitled to fees for litigation over an EAJA fee petition if she is entitled to fees for the underlying litigation. Here the petitioner, having established her rights to relief on the original petition, has demonstrated an entitlement to an award of fee petition expenses since the Secretary's opposition to the fee petition was not "substantially justified."

With respect to the amount of the fee petition expense, we reach the same conclusion we have previously reached in the context of the attorney's fees section of the Social Security Act:

> We perceive no reason why the district court should not set the fees for work in both courts when representation in each was required. That practice reduces the time and effort required of counsel and

also simplifies judicial oversight of the process.

*Guido v. Schweiker*, 775 F.2d 107, 110 (3d Cir.1985).

## IV.

The order of the district court denying an award of attorney's fees and costs under the EAJA will be reversed and the case will be remanded so that the district court may make an award of fees and costs attributable to the recoupment proceedings in the district court and to the fee petition proceedings in the district court and this Court.