TAYLOR, Catherine D., Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

No. 87–1039.

United States Court of Appeals,
Third Circuit.

Argued July 14, 1987.

Decided Dec. 23, 1987.

Rehearing Denied Feb. 25, 1988.
As Amended Feb. 29, 1988.

Alba E. Martinez (argued), David L. Hill, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Dorothea Lundelius (argued), Asst. Regional Counsel, DHHS/OGC/Region III, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, BECKER and HUNTER, Circuit Judges.

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal concerns the denial of appellant's motion for fees and other expenses under the Equal Access to Justice Act, Extension and Amendment ("EAJA"), Pub. L. 99–80, 99 Stat. 183, codified at 5 U.S.C. § 504 (Supp. IV 1986) and 28 U.S.C. § 2412 (1982 & Supp. III 1985). The district court first rejected the government's position and granted appellant's request for disability benefits. Another trial judge later summarily denied appellant's EAJA fee motion in a one-page order. *Taylor v. Bowen*, No. 85–5601 (E.D.Pa. Dec. 29, 1986). This second district court found that the "defense of this action" by appellee the Secretary of Health and Human Services ("the Secretary") "was substantially justified." *Id.* We conclude that the district court's judgment on the EAJA fee motion was legally erroneous. Because the government has failed to demonstrate a solid and well-founded basis in truth for its underlying denial of appellant's request for disability benefits, we will reverse the judgment of the district court and remand this matter

for a calculation of appellant's fees and other expenses under EAJA.

## I.

In her request for Social Security disability benefits, appellant Catherine D. Taylor alleged that she was disabled by incessant lower back pain. Uncontradicted record evidence demonstrates that Taylor's condition leaves her unable to perform even menial household tasks. The record also shows that Taylor's formal education ceased at age sixteen when she completed the sixth grade, and that her most recent employment was in 1971, when she worked as a waitress.

Two treating physicians and one consulting physician examined Taylor and submitted the medical evidence contained in the administrative record. Dr. William Cassidy treated her as an outpatient and was her treating physician during three hospital visits. On July 14, 1983, Taylor was admitted to Philadelphia's Northeastern Hospital by Dr. Cassidy. She complained of severe lower back pain. An x-ray of the lumbosacral spine revealed bilateral spondylolysis of L5.[1] It also revealed a slight narrowing of the L4, L5 disc space. Taylor was placed in traction and given physical therapy and medication. After nine days of hospitalization, she was discharged; Dr. Cassidy reported that Taylor's condition at that time was "much improved." Appendix ("App.") at 104. On January 3, 1984, however, Taylor was readmitted to Northeastern Hospital by Dr. Cassidy; she was then diagnosed as suffering from "severe low back pain [that] did not respond to outpatient treatment and rest at home." *Id.* at 95. Dr. Cassidy's examination revealed "extreme tenderness over the lumbosacral joint." *Id.* After receiving treatment similar to that she had received during her first hospitalization,

Taylor this time was released from the hospital after seven days. On August 15, 1984, she was admitted to Northeastern Hospital for the third time. An examination showed "tenderness ... present over the spine of L5 and S1." *Id.* at 120. A CAT scan revealed that Taylor had "a herniated disc at the L4–5 level." *Id.* Following the CAT scan, however, she "progressed very well" and was discharged ten days later. *Id.* In a September 26, 1984, report submitted to Pennsylvania's Bureau of Disability Determination,[2] Dr. Cassidy indicated that any bending caused Taylor to experience pain that was relieved only by bed rest and medication. *Id.* at 124.

On July 16, 1984, Dr. Richard Paolino, also a treating physician, examined Taylor and diagnosed her condition as a "lumbar strain and sprain, lumbar myofascitis."[3] App. at 115. In his report to the Bureau of Disability Determination, Dr. Paolino noted that, at the time he examined Taylor, she was "unable to walk, stand, [or] sit for long periods of time without experiencing some type of stiffness or pain. [Taylor is] restricted in reaching for objects on shelf." *Id.* Dr. Paolino also noted that Taylor had a "marked impairment of movement to any degree of lateral bending and forward flexion or extension." *Id.*

The third physician, Dr. Nicholas Frignito, conducted a consultative examination of Taylor on April 16, 1985. He concluded that, due to lower back pain, "there is no doubt that [Taylor] is limited in the amount of walking she can do, or the amount of lifting and bending she can do." App. at 131. Dr. Frignito's diagnosis was "Herniated Nucleus Pulposus at L4 and 5 ... with chronic lumbar pain." *Id.*

On July 12, 1984, Taylor applied for Supplementary Security Income based on disability. Her application was denied both initially and upon reconsideration. Taylor

---

**1.** Spondylolysis is a defect in the vertebra, a condition marked by the loosening of the vertebral bodies. *Stedman's Medical Dictionary* 1322 (5th ed. 1982).

**2.** As an agency empowered by Pennsylvania's Department of Labor and Industry, the Bureau of Disability Determination investigates individ-

ual claimants' eligibility for disability benefits under the Social Security Act.

**3.** Lumbar myofascitis is an inflammation of the loins, or the part of the back and sides between the ribs and the pelvis. *Stedman's Medical Dictionary* 811, 922 (5th ed. 1982).

requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on April 9, 1985. App. at 23–26. At this hearing, which lasted a total of eight minutes, Taylor testified that she continuously suffers from lower back pain and that she takes large amounts of medication to alleviate her pain. *Id.* at 28–30. She stated that she can walk no farther than one block and that she can sit for no more than an hour at a time. *Id.* at 30.

The ALJ acknowledged at the hearing that Taylor has a problem with her back that "seems to be getting worse." App. at 32. Nonetheless, on June 11, 1985, the ALJ denied Taylor's request for disability benefits. App. at 9–15. Her request for review was subsequently denied by the Appeals Council. App. at 4. The decision of the ALJ thus stood as the final decision of the Secretary. *Id.*

Taylor appealed to the district court for review of the Secretary's final determination. Both Taylor and the Secretary filed motions for summary judgment. On May 14, 1986, the district court, adopting a magistrate's report, granted Taylor's summary judgment motion. *Taylor v. Bowen,* No. 85–5601 (E.D.Pa. May 14, 1986). The government did not appeal from this judgment for Taylor. Approximately two months later, the trial judge died. Taylor's case was then reassigned to another member of the United States District Court for the Eastern District of Pennsylvania. Before this second trial judge, Taylor filed a motion for attorney's fees under EAJA. The district court denied this motion without opinion. *Taylor,* No. 85–5601 (E.D.Pa. Dec. 29, 1986).

Our appellate jurisdiction to review the district court's final order is conferred by 28 U.S.C. § 1291 (1982), and our standard of review is plenary.[4] *E.g. Russell v. Heckler,* 814 F.2d 148, 152 (3d Cir.), *peti-*

*tion for cert. filed,* 56 U.S.L.W. 3258 (U.S. Oct. 6, 1987) (No. 87–251, filed Aug. 13, 1987); *accord Pullen v. Bowen,* 820 F.2d 105, 109 (4th Cir.1987).

## II.

EAJA entitles a prevailing party to receive reasonable fees and costs incurred in any non-tort civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). We note that Taylor became a "prevailing party" when the district court held that she was entitled to disability benefits. *See Brown v. Secretary of Health & Human Servs.,* 747 F.2d 878, 883 (3d Cir.1984) ("it is the receipt of ... benefits that renders a typical Social Security plaintiff a prevailing party"). We also note that the Secretary does not argue that there are "special circumstances" that would render an EAJA fee award in this case unjust. *See generally Taylor v. United States,* 815 F.2d 249, 252–54 (3d Cir.1987) ("*Taylor II*") (applying EAJA's special circumstances exception); *Brinker v. Guiffrida,* 798 F.2d 661, 667–68 (3d Cir.1986) (rejecting government's claim to fall within this EAJA exception). This appeal thus raises a single question: whether the government's positions in this Social Security disability case, which were rejected by the district court, were nonetheless "substantially justified."

This question is not new to this Court. "[O]n numerous prior occasions," *Edge v. Schweiker,* 814 F.2d 125, 128 (3d Cir.1987) ("*Edge II*"), we have devoted much attention to the task of interpreting the EAJA statutory phrase, "substantially justified." Notwithstanding such attention, however, erroneous district court judgments contin-

---

4. There is a Circuit split on the proper standard for reviewing a district court's application of EAJA's "substantially justified" exception. In *Underwood v. Pierce,* 761 F.2d 1342 (9th Cir. 1985) (per curiam), *modified by order,* 802 F.2d 1107 (9th Cir.1986), *cert. granted,* ⸺ U.S. ⸺, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987), the Court of Appeals reviewed a district court's determina-

tion that the government's litigation position was not substantially justified only "for an abuse of discretion...." 761 F.2d at 1346; *accord Broussard v. Bowen,* 828 F.2d 310, 311, 312 (5th Cir.1987); *Stratton v. Bowen,* 827 F.2d 1447, 1450 (11th Cir.1987); *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1318 (8th Cir.1986).

ue to necessitate the bringing of EAJA appeals, such as this one, to this Court. Accordingly, before we examine the facts before us, we will review the "settled law" detailed in our previous EAJA decisions. *Id.*

### A.

Although EAJA identifies a singular entity—"the position of the United States"—as the focus of a court's inquiry under this statutory exception, 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985), it also makes clear that "the required [inquiry is] two-pronged." *Lee v. Johnson,* 801 F.2d 115, 116 (3d Cir.1986) (Becker, J., dissenting from denial of petition for rehearing *in banc*). EAJA defines " 'position of the United States' [as] ... the position taken by the United States in the civil action [and] the action or failure to act upon which the civil action is based...." 28 U.S.C. § 2412(d)(2)(D) (Supp. III 1985). Accordingly, our decisions "have consistently defined 'position of the United States' as 'not only the litigation position ... but also the agency position [that] made the lawsuit necessary.' " [5] *Lee,* 801 F.2d at 116 (Becker, J., dissenting from denial of petition for

rehearing *in banc* ) (quoting *Natural Resources Defense Council v. United States Envtl. Protection Agency,* 703 F.2d 700, 708 (3d Cir.1983)). As Judge Becker summarized matters in *Lee,* "the government is thus deemed to have two positions for EAJA purposes, both [of which] must be 'substantially justified'.... [I]f either government position does not bear scrutiny, the prevailing private party should be awarded attorneys' fees [and other reasonable fees and expenses]." *Id.*

### B.

When a court reviews an EAJA fee petition, its scrutiny involves the process of determining whether the government's positions—that is, the underlying agency or administrative action or inaction, and the government's position in the lawsuit prompted thereby—are "substantially justified." 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). Interpreting this statutory phrase has caused considerable division in the Courts of Appeals.[6] While some courts have concluded that EAJA demands only that the government's positions be reasonable,[7] others have required a higher quan-

---

5. *See, e.g., Coup v. Heckler,* 834 F.2d 313, 319 (3d Cir.1987); *Garcia v. Schweiker,* 829 F.2d 396, 399 n. 2 (3d Cir.1987); *Brinker,* 798 F.2d at 663; *Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376, 1389 (3d Cir.), *cert. denied sub nom. DialAmerica Mktg., Inc. v. Brock,* 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Washington v. Heckler,* 756 F.2d 959, 961 (3d Cir.1985); *Citizens Council of Del. County v. Brinegar,* 741 F.2d 584, 593 (3d Cir.1984); *Dougherty v. Lehman,* 711 F.2d 555, 563 n. 12 (3d Cir.1983); *cf.* Note, *Institutionalizing An Experiment: The Extension of the Equal Access to Justice Act—Questions Resolved, Questions Remaining,* 14 Fla.St.U.L.Rev. 925, 942 (1987) ("Better reasoning [on this question] is found in [*Brinker*], a post-amendments case from the Third Circuit.").

-- -

6. *See generally Rosado v. Bowen,* 823 F.2d 40, 42 (2d Cir.1987) (itemizing courts that employ a reasonableness standard and courts that employ a stricter test, but not characterizing the position of this Court and not reaching the issue itself); *Riddle v. Secretary of Health & Human Servs.,* 817 F.2d 1238, 1242–43 & nn. 1 & 3 (reviewing decisions that have analyzed the legislative history of the reenacted EAJA), *rehearing en banc granted and opinion vacated,* 823 F.2d 164 (6th Cir.1987); Annotation, *What Con-*

*stitutes Substantial Justification of Government's Position So As to Prohibit Awards of Attorneys' Fees Against Government Under Equal Access to Justice Act (28 USCS § 2412(d)(1)(A)),* 69 A.L.R. Fed. 130 (1984 & Supp. 1987) (compiling decisions); *but cf. Pullen,* 820 F.2d at 108 ("In practice, any difference between the 'reasonable in fact and law', the 'more than merely reasonable', and the 'clearly reasonable' standards appears more semantic than real.").

7. *See Griffon v. United States Dep't of Health & Human Servs.,* 832 F.2d 51, 52 (5th Cir.1987) (unsigned order on application for attorneys' fees) ("[W]e have said that '[t]he touchstone of substantial justification is reasonableness,' and that government meets its burden 'if it shows that its position has a reasonable basis both in law and fact.' ") (*quoting USLife Title Ins. Co. of Dallas v. Harbison,* 784 F.2d 1238, 1242 (5th Cir.1986)); *Barry v. Bowen,* 825 F.2d 1324, 1330 (9th Cir.1987) (" 'The test ... is essentially one of reasonableness.' ") (*quoting* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4953, 4989); *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir.1987) ("We have equated th[e 'substantially justified'] standard with a test of reasonableness...."); *Pullen,* 820 F.2d at 108

tum of proof.[8]

In *Lee v. Johnson,* 799 F.2d 31 (3d Cir.1986), we held, relying on the language of the House Committee on the Judiciary Report[9] that accompanied the 1985 legislation reviving EAJA after its expiration in 1984,[10] that the "substantially justified" exception requires the government to "show more than that [its] position was merely

reasonable."[11]  *Id.* at 38 n. 7. Since *Lee,* we have reiterated its holding that EAJA requires more than mere reasonableness. *See Russell,* 814 F.2d at 153 (*quoting* H.R. Rep. No. 120, 99th Cong., 1st Sess. 9–10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138); *Stokes v. Bowen,* 811 F.2d 814, 816 (3d Cir.1987) ("*Stokes II*") (same); *see also United States v.*

---

("[W]e adhere to the ... standard of 'reasonable in fact and law.' "); *Adams & Westlake, Ltd. v. NLRB,* 814 F.2d 1161, 1167 (7th Cir.1987) ("This court has held that the position of an agency is substantially justified if it has a reasonable basis in both law and fact."); *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1497 ("The standard for substantial justification is one of reasonableness."), *unrelated part vacated per curiam on petition for rehearing,* 804 F.2d 1573 (11th Cir. 1986); *Fulton v. Heckler,* 784 F.2d 348, 349 (10th Cir.1986) ("In this circuit the test for substantial justification is essentially one of 'reasonableness in both law and fact.' ") (citations omitted). Many of these courts have concluded that the 1985 Report of the House Committee on the Judiciary, discussed *infra,* does not accurately reflect the legislative intent underlying the permanently reenacted EAJA; some have found the legislative history to be ambiguous.

8.  *See Trundle v. Bowen,* 830 F.2d 807, 811 (8th Cir.1987) (*per curiam* ) ("[T]he Secretary's decision is not ... so clearly reasonable or well-founded in law and fact that a denial of EAJA fees is appropriate."); *Trahan v. Regan,* 824 F.2d 96, 101 (D.C.Cir.1987) ("a court considering a fees application under the EAJA must inquire if the government's actions were 'slightly more than reasonable' "); *Riddle,* 817 F.2d at 1244 ("the government's position must be firmly grounded or solidly based in law and fact"); *Devine v. National Treasury Employees Union,* 805 F.2d 384, 386 (Fed.Cir.1986) ("[The government] must show that it 'was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts.' ") (*quoting Gavette v. Office of Personnel Mgmt.,* 785 F.2d 1568, 1579 (Fed.Cir.1986) (*en banc* )) (emphasis in *Gavette* ).

9.  H.R.Rep. No. 120, 99th Cong., 1st Sess. 9–10 (1985), *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 138, reads, in pertinent part, as follows:

Another problem [that] has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than reasonable. Because in 1980 Congress rejected a standard of "reasonably justified," the test must be more than reasonableness.

10.  For a comprehensive account of the sequence of legislative and executive acts that culminated in the permanent enactment of EAJA in 1985, see *Allen v. Bowen,* 821 F.2d 963, 964–66 (3d Cir.1987).

11.  *Lee* was not an unanimous decision. (Now Chief) Judge Gibbons, author of the Court's opinion, wrote that the standard articulated in *Lee,* quoted in the text above, "is consistent with th[e] language" of the House Report quoted in note 9.799 F.2d at 38 n. 7. Judge Rosenn, who concurred in all other respects, wrote separately to set forth what he called a "more stringent" view. *Id.* at 40.

The legislative history ... persuades me that Congress intended that an evaluation of "substantial justification" under [EAJA] requires more than a marginal standard of reasonableness.... I conclude that the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct.

*Id.* at 40–41 (Rosenn, J., concurring). Judge Becker, who dissented on an unrelated issue, offered no interpretation of the statutory phrase "substantially justified." *See id.* at 41–45 (Becker, J., dissenting).

Careful examination of the *Lee* opinions and our subsequent decisions convinces us that a consistent interpretation of "substantially justified" has been set forth and followed by this Court. Although the idea has been expressed in a variety of ways, our holdings since the reenactment of EAJA have, consistent with the House Report, required more than mere reasonableness. The government must demonstrate that its factual and legal positions in the underlying agency action and in the subsequent litigation have been solid and well-founded if it is to fall within this EAJA exception. Indeed, counsel for the Secretary seemed to concede this point at oral argument:

MS. LUNDELIUS: There's no question that the Third Circuit has always considered substantial justification to be more than a "merely reasonable" test.

THE COURT: Now what is wrong with that? Are you suggesting that that's not a proper statement of the law?

MS. LUNDELIUS: No, I'm not suggesting that at all.

Cassette Record of Oral Argument.

*1,378.65 Acres of Land,* 794 F.2d 1313, 1318 (8th Cir.1986) (Rosenn, J.,[12] joined by Lay, C.J., and Bright, J.) (".... Congress did not intend a reasonableness standard for substantial justification of government action to be weak or relaxed.... [T]he Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct.") (footnote omitted). We believe that Judge Rosenn's summary, which we have just quoted in the parenthetical, encapsulates this Court's jurisprudence to date, and we adopt it as a shorthand formulation of our case law in this area. In EAJA cases in this Circuit, a government position is "substantially justified" if it is solid and well-founded.

The burden of proving that each of its positions was substantially justified belongs to the government. We recently summarized the series of proofs it must make as follows:

In order to prevail, the government must show: 1) a [solid and well-founded] basis in truth for the facts alleged; 2) a [solid and well-founded] basis in law for the theory it prepounded; and 3) a [solid and well-founded] connection between the facts alleged and the legal theory advanced. *Washington v. Heckler,* 756 F.2d 959, 961 (3d Cir.1985) (citing *Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584, 593 (3d Cir. 1984)).

*Garcia v. Schweiker,* 829 F.2d 396, 399 (3d Cir.1987); *accord Coup v. Heckler,* 834 F.2d 313, 319 (3d Cir.1987).[13] In short, unless the government clears six hurdles (three required showings for each of two positions), EAJA renders it liable for the prevailing party's reasonable fees and costs.

### III.

■ Applying the foregoing legal precepts to the government's position in the underlying disability case,[14] we conclude

---

**12.** Honorable Max Rosenn, United States Court of Appeals for the Third Circuit, sitting by designation. *See supra* note 11.

**13.** In *Garcia* and again in *Coup,* we admittedly and repeatedly used the adjective "reasonable" to describe the government's burden of proof at each stage in the process of showing that its positions were substantially justified. *See also Baeder v. Heckler,* 826 F.2d 1345, 1346 (3d Cir. 1987) (*per curiam*) ("*Baeder II*"). We do not believe, however, that these decisions intended to or did change our established standard. In this regard, we note that *Garcia* itself, citing *Stokes II,* rejected the Secretary's argument "that substantial justification should be judged under a reasonableness standard, something less than a substantial evidence standard...." 829 F.2d at 399 n. 3. In addition, we note that the author of both *Garcia* and *Coup* has written previously for our Court that "the government must show more than that [its] position was merely reasonable." *Lee,* 799 F.2d at 38 n. 7 (Gibbons, J.). Finally, we note that the House Report, as interpreted and applied in our previous decisions in *Lee, Stokes II* and *Russell,* makes it amply clear that the government's burden of proof, whatever its proper label, is considerably greater than mere reasonableness. *See supra* note 11 and accompanying text.

For a discussion of whether the government can ever satisfy this burden in a disability benefits case where its original position—denying such benefits—was not based on substantial record evidence, see *infra* at 1043–44.

**14.** In this case, the Secretary adopted in total, and defended in the district court, the ALJ's evaluation of Taylor's disability claim. The ALJ's determination that Taylor was not disabled thus became the government's underlying position, one of the two positions of the United States that must be substantially justified if this appeal is to fall within EAJA's exception. *Cf. Baeder v. Heckler,* 768 F.2d 547, 549, 552 (3d Cir.1985) ("*Baeder I*") (with Appeals Council approval, ALJ's ruling became the final decision of the Secretary; Court of Appeals examined what "the ALJ and the Secretary found").

Although the government's two positions here are virtually identical, the district court apparently did not consider whether the underlying position of the government was substantially justified. Instead, the district court's brief order denied the fee motion "on the grounds that the Defendant's *defense of this action* [, i.e., the government's position in the civil litigation that resulted from the Secretary's underlying position,] was substantially justified." *Taylor,* No. 85–5601 (E.D.Pa. Dec. 29, 1986) (emphasis added). This failure even "to address whether the Secretary had made the tripartite showing of proof [for one of the government's two positions,] required by" EAJA and our prior decisions, is a clear error of law. *Tressler v. Heckler,* 748 F.2d 146, 150 (3d Cir.1984); *accord Brinker,* 798 F.2d at 667. Because our review is plenary, we nonetheless will proceed to make our own evaluation of the government's underlying position. *See, e.g., Tressler,* 748 F.2d at 150.

that the government has not borne its burden of proving that its position was substantially justified.

### A.

The government has failed to clear the first hurdle in this EAJA inquiry: demonstrating a solid and well-founded basis in truth for its denial of Taylor's request for disability benefits. Three physicians submitted to the ALJ unopposed medical evidence that confirmed the existence and severity of Taylor's medical condition. Taylor also offered her own testimony regarding her chronic back pain. In sum, the record evidence concerning Taylor's disability was strong and detailed. *Cf. Rosado v. Bowen*, 823 F.2d 40, 43 (2d Cir.1987) (because evidence of impairment was weak and undeveloped at time of initial hearing before ALJ, government's denial of benefits then was substantially justified). Despite this uncontradicted evidence, however, the ALJ found, on the basis of his observations at the eight minute hearing,[15] that

> [Taylor] has the residual functional capacity to perform work-related function [sic] except for work revolving [sic] prolonged sitting, standing, walking, climbing, balancing, stooping, crouching and kneeling. She is capable of performing many functions but [sic?] alternating her work position. ... [Taylor] has the residual functional capacity to perform sedentary work [that] provides for alternate standing.

App. at 15. As United States Magistrate Richard A. Powers, III, concluded in a report that the first district court judge subsequently adopted as his own, "the ALJ did not give proper weight to the medical evidence [that] establishes beyond any scintilla of doubt that [Taylor] is disabled." *Taylor v. Bowen*, No. 85–5601, Report–Recommendation at 3 (E.D.Pa. Apr. 23, 1986).

Instead, contrary to all of the record evidence, the ALJ—i.e., the government—simply decided that Taylor could perform sedentary work and, therefore, that she was not disabled. The enormous gap between the ALJ's position and the reality reflected in the record evidence refutes the Secretary's claim that the ALJ's factual position was solid and well-founded. *See Garcia*, 829 F.2d at 399–400; *Bailey v. Bowen*, 827 F.2d 368, 371 (8th Cir.1987); *Edge II*, 814 F.2d at 128–29; *Dennis v. Heckler*, 756 F.2d 971, 976 (3d Cir.1985); *Tressler v. Heckler*, 748 F.2d 146, 150 (3d Cir.1984).

Taylor urges us, however, to go further. She argues that, in a case where the government's underlying position has failed to pass a court's relatively deferential review under the "substantial evidence" standard, that position by definition also fails to be "substantially justified" under EAJA.[16] In each such case, in other words, Taylor would have us hold the government liable for its opponent's reasonable fees and costs unless "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). In *Washington v. Heckler*, 756 F.2d 959 (3d Cir.1985), a decision rendered prior to the permanent reenactment of EAJA, (then) Chief Judge Aldisert's powerful concurring opinion argued the position that Taylor is now urging upon this Court.

> [B]ased on the bottom line dispositions of this court in Social Security cases, I advocate one single test by which a court may grant attorney's fees to a Social Security claimant on the ground that there was no substantial evidence on the record supporting the Secretary's position. I would hold as a matter of law that, absent truly extraordinary circumstances, in each such case the position of the United States was not substantially justified.

*Id.* at 969 (Aldisert, C.J., concurring). Despite the obvious appeal of this position on

---

**15.** After Taylor was duly sworn, for example, the ALJ's first question was: "You were able to stand and raise your right hand very comfortably, I didn't notice any problem, was that painful for you at all?" App. at 25.

**16.** For a generally illuminating discussion of this conceptual problem, written before the permanent reenactment of EAJA, see Cromwell, *A Substantial Paradox: Attorney's Fees Under the Equal Access to Justice Act in Social Security Appeals*, 7 U.Ark. Little Rock L.J. 355, 383–85 (1984).

grounds of policy, however, it was rejected by our Court. *Id.* at 961 n. 2; *id.* at 970–71 (Stern, J., concurring).

■ Although this position has become even more appealing since *Washington,* we still decline to recognize such a *per se* rule. In its report accompanying the permanent reenactment of EAJA, the House Committee on the Judiciary found

> [e]specially puzzling ... statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 138. Although this statement of legislative intent approaches the position advocated by Taylor, we believe that Congress has left the door open to the possibility that the government could demonstrate that a denial of disability benefits that flunked substantial evidence review was nonetheless substantially justified.[17] *See* Note, *Institutionalizing An Experiment: The Extension of the Equal Access to Justice Act—Questions Resolved, Questions Remaining,* 14 Fla.St.U.L.Rev. 925, 936

(1987) ("Although this [House Report] indicates a preference for a more rigorous standard for the government, the Committee expected that due to the variety of factual contexts and legal issues involved in EAJA cases, the determination of what is 'substantially justified' will be decided on a case-by-case basis."). We note that our interpretation, unlike Taylor's preserves independent meaning for *each* of the exceptions ("substantially justified" and "special circumstances") that Congress included in EAJA, and we conclude that our pattern of decisions conforms to the way that "the meaning of the term 'substantially justified' has been effectively resolved by Congress." *Stokes II,* 811 F.2d at 815–16.

### B.

Because the government has failed to clear the first hurdle, our EAJA inquiry is at an end. We need not determine whether the government had a solid and well-founded basis in law for its decision denying Taylor's request for disability benefits (hurdle two), or whether there was a sufficient connection between the facts it alleged and the legal theory it propounded in the underlying action (hurdle three). We also need not examine whether the government's litigation position before the first trial judge was "substantially justified" under EAJA (hurdles four, five and six). Because the ALJ's factual position was neither solid nor well-founded, Taylor is entitled to reasonable fees and costs under EAJA.

---

**17.** The Secretary has called our attention to President Reagan's

> understanding in signing [the permanent EAJA] that the Congress recognized the important distinction between the substantial justification standard in the fee proceeding and a court's finding on the merits that an agency action was arbitrary and capricious or not supported by substantial evidence. The substantial justification standard is a different standard, and an easier one to meet, than either the arbitrary and capricious or substantial evidence standard. A separate inquiry is [therefore] required....

Statement on Signing H.R. 2378 Into Law, 21 *Weekly Comp.Pres.Doc.* 967 (Aug. 5, 1985) (P.L. 99–80). This statement of executive intent is, we believe, largely inconsistent with the legislative history that our Court has relied upon in the course of defining when a government position is "substantially justified" under EAJA. Because we are bound by our previous decisions that rely exclusively upon the statements of legislative intent in the 1985 House Report, we do not determine what weight, if any, a presidential signing statement deserves in the process of statutory interpretation. *See generally* Garber & Wimmer, *Presidential Signing Statements As Interpretations of Legislative Intent: An Executive Aggrandizement of Power,* 24 Harv. J. on Legis. 363 (1987); Toobin, *The Last Word,* New Republic, Nov. 3, 1986, at 13; Garber & Wimmer, *President's Statements At Signings No Help to U.S. Judges,* Nat'l L.J., Sept. 8, 1986, at 15.

## IV.

For the foregoing reasons, we will reverse the judgment of the district court and remand this matter to the district court for a calculation of Taylor's fees and other expenses under EAJA.