989 F.2d 123
 HANOVER POTATO PRODUCTS, INC.; National Coalition of Fresh
Potato Processors; Endico Potatoes, Inc.;
Pre-Peeled Potato Co., Inc., Appellants,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
David A. Kessler, M.D., Commissioner of Food and Drugs.
 No. 92-7229.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 8, 1993.
Decided March 19, 1993.
 
 James R. Phelps, (Argued), Robert A. Dormer, Mary Beth Neraas, Hyman, Phelps & McNamara, Washington, DC, Thomas B. Schmidt, III, Donna L. Fisher, John A. Witherow, Jr., Pepper, Hamilton & Scheetz, Harrisburg, PA, for Appellants.
 Stuart M. Gerson, Asst. Atty. Gen., James J. West, U.S. Atty., Michael J. Singer, Mary K. Doyle (Argued), Attys., Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC, for Appellees.
 Before: MANSMANN, NYGAARD, Circuit Judges, and DALZELL, District Judge*
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Hanover Potato Products, Inc., and its co-appellants (collectively "Hanover"), appeal from an order of the district court denying their application for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The district court held that although Hanover was a qualified prevailing party under the EAJA, the government's position in defending Hanover's claim was substantially justified. Because we conclude that the government's position was not substantially justified, we will reverse and remand for the entry of an appropriate fee award.
 
 I. FACTS AND PROCEDURE
 A. Background
 
 2
 This case is now before us again, having had an involved history both here and in the district court. Plaintiff-appellants are a coalition of fresh potato producers who market pre-peeled and pre-cut potato products, primarily to the restaurant industry. To preserve the potatoes for the required shelf life without unsightly discoloration, they are treated with sulfites before shipping. Because of health concerns about possible harm from sulfites to certain sensitive individuals, the Food and Drug Administration ("FDA") proposed a regulation in 1987 revoking the "generally recognized as safe" status of sulfite agents as applied to "fresh"[1] potatoes intended to be served to the consumer unpackaged and unlabeled. 52 Fed.Reg. 46,968 (Dec. 10, 1987). In the FDA's notice of proposed rulemaking, it stated that, in accordance with the requirements of 21 C.F.R. § 10.40 (1987), the various documents comprising the administrative record were on file at the agency's Dockets Management Branch. The comment period was initially scheduled to close on February 8, 1988.
 
 
 3
 Hanover's co-plaintiff in this litigation is the National Coalition of Fresh Potato Processors ("the Coalition"). The Coalition is a trade association whose sole purpose is to represent the fresh potato industry on the sulfite regulation issue. After successfully petitioning for an extension of the comment period to March 9, the Coalition submitted detailed comments to the FDA explaining why the industry believed that a ban on sulfites was unnecessary. The thrust of these comments was that a sulfite ban would put the entire fresh potato industry out of business, even though less drastic regulatory alternatives, such as better labeling and reduced sulfite levels through the use of "Good Manufacturing Practices," were available. Neither the Coalition nor any of the other plaintiffs, however, made any attempt to examine or contest the adequacy of the administrative record during the comment period.
 
 
 4
 Two years later, the FDA issued a final rule banning the use of sulfites on fresh potatoes, to become effective on April 16, 1990. 55 Fed.Reg. 9,826 (Mar. 15, 1990). On March 23, the Coalition requested that the FDA produce the eighty-three volume administrative record on which it had purportedly based its regulatory decision. The FDA, however, was evidently slow in producing these documents. After the FDA had produced forty-eight volumes, the Coalition filed, on April 2 and 4 respectively, petitions with the FDA to stay implementation of the sulfite ban for thirty days and to reconsider its decision.[2] An important purpose of these petitions was to give the industry time to review the complete record before the regulation went into effect; however, the FDA did not act on either petition until June 13, when it denied both.
 
 B. Litigation on the Merits
 1. District Court Proceedings
 
 5
 Frustrated by the recalcitrant FDA, and concluding that those parts of the record that had been made available did not support the regulation (which was to be implemented in only five more days), Hanover filed suit in the district court on April 11, 1990. The complaint alleged, among other things, that the FDA had no support in the record for many of its key regulatory conclusions. The district court granted a temporary restraining order and scheduled an expedited preliminary injunction hearing.
 
 
 6
 After the hearing, the district court concluded that Hanover "failed to present any substantial evidence that the agency's rationale [was] defective," vacated the TRO and denied Hanover's motion for a preliminary injunction.[3] Hanover then filed a motion for reconsideration.[4]
 
 
 7
 Responding to Hanover's motion for reconsideration, the FDA made a surprising disclosure: the eighty-three volume record previously certified was not the true and complete administrative record after all. Instead, the FDA now asserted that the true record was still being assembled. After the district court ordered the FDA to submit these documents, a new forty-two volume record was certified. Fully sixty-three percent of this new record, and ninety-one percent of the new material filed pursuant to the court's order, had never been placed on file at the Dockets Management Branch, but was kept at the non-public offices of the Center for Food Safety and Nutrition.
 
 
 8
 Even the FDA now agrees that its "handling of the administrative record in this case [was] not a model for conduct of the informal rulemaking process." FDA brief at 29. Nevertheless, in the district court the FDA offered four defenses to support its omissions. First, it asserted that the agency had in fact complied with its own regulations. The crux of this argument was that the preamble to 21 C.F.R. § 10.40(g) (1987) did not require every document to be placed on the public file. Second, it maintained that a court may not impose additional procedures on an agency not otherwise required by statute. Third, it argued that Hanover waived its objections by not raising them during the comment period. Finally, the FDA asserted that because Hanover did not examine the administrative record during the comment period, it suffered no prejudice from FDA's omissions.
 
 
 9
 Nevertheless, this unexpected development led the district court to reconsider its conclusion and hold that the FDA, by not making the entire record available for public inspection, acted arbitrarily and capriciously.[5] The court then granted summary judgment in favor of Hanover, rejecting the four defenses the FDA offered to justify its position. The court specifically rejected the FDA's "no-prejudice" argument, stating
 
 
 10
 it is certainly possible that the agency's actions may have been different had the information relied upon by the FDA been available to interested parties during the notice and comment period. We can conclude prejudice from the sheer volume of what was not made available to the public.
 
 
 11
 Hanover Potato Products, Inc. v. Sullivan, op. at 7, No. 1:CV-90-0746 (M.D.Pa. Aug. 3, 1990). The FDA appealed.
 
 2. Proceedings on Appeal
 
 12
 A panel of this court held that the FDA had indeed violated its own regulations. Nevertheless, at the FDA's urging, it vacated the district court's order and remanded with instructions for the district court to permit the FDA to defend its regulation using only those documents it had initially made available for review. The panel specifically declined to reach the issue of whether the FDA's omissions prejudiced Hanover, because it believed the opportunity it gave the parties on remand was sufficient to eradicate any prejudice. Hanover Potato Products, Inc. v. Sullivan, slip op. at 9, No. 90-5738, 1991 WL 7668 (3d Cir. Jan. 29, 1991).
 
 
 13
 Hanover then sought and was granted panel rehearing. Hanover Potato Products, Inc. v. Sullivan, No. 90-5738, 1991 WL 35857 (3d Cir. Mar. 20, 1991). The holding, remedy and rationale of the revised opinion were substantially the same as those of the original opinion.
 
 
 14
 After another petition from Hanover, we vacated the second panel decision and granted rehearing in banc. The in banc court was equally divided and affirmed the district court without opinion.[6] Accordingly, Hanover won on the merits and the regulation was struck down until the FDA repromulgates it in accordance with proper notice and comment procedures under the Administrative Procedure Act and its own regulations.
 
 C. The Fee Application
 
 15
 As a prevailing party, Hanover then moved in the district court for attorney's fees under the EAJA, 28 U.S.C. § 2412. The district court denied the motion on the sole ground that, because Hanover did not review the administrative record during the comment period, it was not prejudiced by the FDA's omissions. Thus, even though the FDA lost on the merits, the district court held that the position the agency took was substantially justified, precluding a fee award under the EAJA.
 
 II. STANDARD OF REVIEW
 
 16
 We review a district court's determination of substantial justification in an EAJA case for abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988). "An abuse of discretion arises when 'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir.1992) (quoting International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir.1987)). We have also stated that "[a]n abuse of discretion can occur when no reasonable person would adopt the district court's view." Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir.1990). We will therefore not disturb an exercise of discretion "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Ferrero, U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 48 (3d Cir.1991).
 
 
 17
 If the district court uses improper legal standards or procedures to decide a fee issue, an abuse of discretion occurs automatically, which is merely another way of saying that our review becomes plenary. See DeWalt v. Sullivan, 963 F.2d 27, 28 (3d Cir.1992) (amount of attorney's fees under EAJA); Kean v. Stone, 966 F.2d 119, 121 (3d Cir.1992) (amount of attorney's fees under 5 U.S.C. § 7701(g)); Ferrero, 952 F.2d at 48 (availability of attorney's fees under Lanham Act); Rode, 892 F.2d at 1182 (amount of attorney's fees under 42 U.S.C. § 1988); Silberman v. Bogle, 683 F.2d 62, 65 (3d Cir.1982) (availability of attorney's fees in SEC proceedings). Thus, to the extent the district court used incorrect legal standards or focused on improper considerations, we will review its decision under a de novo standard.[7]
 
 
 18
 Finally, as part of abuse of discretion review, we examine the district court's factual findings for clear error. See Frazier, 966 F.2d at 815; Rode, 892 F.2d at 1182-83.
 
 III. SUBSTANTIAL JUSTIFICATION
 A. Definition
 
 19
 The EAJA, 28 U.S.C. § 2412(d)(1)(A), provides, in pertinent part, that a court shall award attorney's fees to a prevailing party in litigation against the United States that judicially reviews U.S. agency action, unless the court finds that the "position of the United States" was "substantially justified." The issue in this case is whether the district court abused its discretion by finding the FDA substantially justified in taking these actions and positions.
 
 
 20
 Substantial justification under the EAJA has been defined by the Supreme Court as "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565, 108 S.Ct. at 2550. Alternatively phrased, an agency position is substantially justified if it has a reasonable basis in both law and fact. See id.
 
 
 21
 The burden of demonstrating substantial justification for its position rests squarely on the government agency. Dougherty v. Lehman, 711 F.2d 555, 561 (3d Cir.1983). Before Pierce was decided, we held that for the government to meet its burden, it must show:
 
 
 22
 1. a solid and well-founded basis in truth for the facts alleged; 2. a solid and well-founded basis in law for the theory it propounded; and 3. a solid and well-founded connection between the facts alleged and the legal theory advanced.
 
 
 23
 Taylor v. Heckler, 835 F.2d 1037, 1042 (3d Cir.1987) (quoting Garcia v. Schweiker, 829 F.2d 396, 399 (3d Cir.1987)).[8] Pierce, of course, adopted a reasonableness standard for substantial justification. Accordingly, we will no longer require a "solid and well-founded" basis, but rather a reasonable basis only. Nevertheless, the basic framework enunciated by Garcia, as modified by Pierce, is still the correct statement of the law of substantial justification.
 
 
 24
 Moreover, under 28 U.S.C. § 2412(d)(2)(D), "the position of the United States" includes not only the position taken in the litigation, but the agency position that made the litigation necessary in the first place. Taylor, 835 F.2d at 1040 (quoting Lee v. Johnson, 801 F.2d 115, 116 (Becker, J., dissenting sur denial of petition for rehearing)). Thus, unless both the agency's litigation and pre-litigation positions meet the modified three-part criteria of Taylor, the government's position is not substantially justified. Taylor, 835 F.2d at 1042.
 
 
 25
 B. The District Court's "No Prejudice" Rationale
 
 
 26
 The FDA had advanced four legal theories to support its position. The district court, however, based its denial of attorney's fees on the sole ground that it was reasonable for the FDA to argue that the agency's failure to place over sixty-three percent of the administrative record on file could not have prejudiced Hanover:
 
 
 27
 This litigation was not based upon the government's conduct in withholding some of the records from public inspection[.] ... Rather, the plaintiffs sued because they considered the sulfite ban unnecessary and insupportable by any record the government could have built. Before the rule became final, however, they had contented themselves with filing their comments and did not check the Dockets Management Branch....
 
 
 28
 The plaintiffs' failure to inspect the record is significant because, once the government began to compile it after the litigation was started, it became apparent that it was incomplete and discovery of the violation of 21 C.F.R. § 10.40(g) readily followed. Unfortunately, the plaintiffs could have just as easily discovered the violation if they had previously checked the public record.
 
 
 29
 Hanover Potato Products, Inc. v. Sullivan, op. at 16, No. 1:CV-90-746 (M.D.Pa. Apr. 2, 1992). This reasoning is flawed for several reasons.
 
 
 30
 The district court apparently found that this litigation would not have been necessary if Hanover had only checked the record on file at the Dockets Management Branch while the comment period was still running. This assumes, however, that if Hanover had checked the administrative record, it would have discovered not only that the record did not support the FDA's proposed regulation, but that the reason why it did not was that the FDA had omitted to place a significant amount of supporting data into the file. Because, as a matter of basic epistemology, one obviously cannot know the facts one does not know, this assumption is questionable at best. Indeed, it both appears from the record and was unrebutted at oral argument that Hanover could not have discovered that portions of the administrative record had been omitted even if Hanover had examined it during the comment period. Instead, it seems far more likely that Hanover would have concluded, as it ultimately did in this case, that the FDA simply did not have any record capable of supporting its sulfite ban.
 
 
 31
 Nor is there any reason to believe that the FDA would have seen and corrected its mistake by certifying the true record if Hanover had requested it during the comment period rather than on the eve of litigation. Per contra, there is every indication that the agency would have given Hanover the same eighty-three volume, incomplete record on which the FDA later attempted to justify the sulfite ban during the litigation. An agency that stubbornly defends an incomplete record until well into litigation would not appear likely to change its position simply upon the request of an interested party.
 
 
 32
 Hence, there is every reason to believe that even if Hanover had requested the record during the comment period, it still would have had to await the FDA's promulgation of the final rule, after which it would have had to pursue the exact same course as it did here: petition for reconsideration and then sue. Therefore it is not factually reasonable for the agency to take the position that Hanover suffered no prejudice. In any event, to the extent that the district court based its analysis of prejudice on the fact that Hanover would not have had to sue had it requested the record earlier, its determination was clearly erroneous.
 
 
 33
 The FDA argues that the underlying merits of the litigation involved not the adequacy of the record placed on the public file, but the validity of the agency's rule under any conceivable record. Because Hanover won only a temporary invalidation of the sulfite ban on procedural grounds, and because it could not find any "smoking gun" in the complete record that undermined the FDA's rationale for the sulfite ban, the agency contends the ban will still go into effect when repromulgated. Thus, according to the FDA, its omissions from the original record could not have harmed Hanover. The thrust of this assertion is that if the FDA had placed the complete record on file initially, Hanover would likely have lost its lawsuit challenging the regulation. Once the FDA repromulgates the sulfite ban, the regulation will presumably be supported by a complete record. Thus, if Hanover sues again to invalidate it, Hanover will still be likely to lose. Because the FDA contends the outcome would be the same either way, the FDA would have us conclude it was reasonable for it to argue that Hanover was not prejudiced.
 
 
 34
 The problem with this reasoning is that it focuses on the ultimate outcome of the proceedings but ignores entirely the number of lawsuits required to reach that final result. Assuming for the sake of argument that Hanover would have been doomed on the merits either way, a speculative proposition, prejudice still exists. If the FDA had placed everything on the record, and Hanover had lost, the loss would have occurred after pursuing only one litigation. Hanover may still ultimately lose, but because of the FDA's misfeasance, only after (and if) it relitigates the agency's repromulgated rule. Obviously, all the costs of this round of litigation were completely unnecessary and the result of the FDA's unjustified position. This makes the FDA's "no-prejudice" argument unreasonable on legal grounds.[9] For the district court not to consider such an important factor in its analysis constitutes reversible error.
 
 
 35
 In addition, a district court must consider not only the agency's litigating position, but the agency's pre-litigation actions as well. In this case, the district court was required to consider that the FDA promulgated a regulation with an insufficient public record, requiring at least one needless court challenge. Nevertheless, the district court considered only the agency's litigation argument that no prejudice occurred, and not the regulatory agency's conduct itself. It focused on Hanover's behavior in not obtaining the record early enough, implying that the burden of reviewing an administrative record for completeness falls on the challenging party. To the extent it imposed such a burden on Hanover and not the FDA, the district court failed to apply the correct legal standard. As Hanover rightly points out, such a burden shift would be unworkable, since without litigation the regulated party would be largely unable to obtain the "hidden" documents relied on by the agency. Nor would it even know in which instances it was required to look, since the absence of key supporting documentation would rarely if ever be evident from the record itself.
 
 
 36
 The district court also relied on the two vacated panel opinions to reach its conclusion. Although it recognized that these opinions no longer had vitality, it considered the panel's refusal to reach the prejudice issue, as well as the five judges of the in banc court "who would have agreed with the government," as a tacit acceptance of the reasonableness of the FDA's position.
 
 
 37
 This was incorrect. The vacated panel opinions have no precedential value and the vote count itself from the court in banc is of no consequence in determining whether the FDA's position was substantially justified. We realize that the procedural posture of this case on the merits was complex and certainly unusual. Nevertheless, when the in banc court affirmed the district court on the merits by an equally divided vote, the district court's own decision became the law of the case.
 
 
 38
 Finally, Hanover argues that because the FDA's "no-prejudice" argument was contrary to settled law, it was therefore not substantially justified. We have held that "a legal position is substantially justified if it relates to an unsettled or close question of law, but not if it offends established precedent." Russell v. Heckler, 814 F.2d 148, 153 (3d Cir.1987), remanded for reconsideration in light of Pierce, 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988), result reinstated, 866 F.2d 638 (3d Cir.1989). We believe the holding of Russell survives Pierce, since a reasonable litigant would not assert a position contrary to settled law. Nevertheless, we must reject Hanover's argument.
 
 
 39
 If the FDA had asserted a position contrary to settled law, we would agree with Hanover. Here, neither the Supreme Court nor this court has addressed the argument raised by the FDA in the merits litigation, although a number of other courts of appeal have appeared to resolve it in Hanover's favor by holding that failing to place important data on the record constitutes prejudicial error. See, e.g., Portland Cement Association v. Ruckelshaus, 486 F.2d 375, 393 (D.C.Cir.1973); National Black Media Coalition v. FCC, 791 F.2d 1016, 1023-24 (2d Cir.1986); United States v. Nova Scotia Food Products Corp., 568 F.2d 240, 252 (2d Cir.1977); Aqua Slide 'n' Dive Corp. v. Consumer Product Safety Commission, 569 F.2d 831, 842 (5th Cir.1978). We do not believe it is unjustified for a government agency to assert a position in one court merely because it has been rejected in another. Such a rule would tend to give undue authority to the first appellate court to decide an issue and chill advocacy. If the agency raised its position in the second court and lost, it could be charged with attorney's fees solely because it lost in the first court.
 
 
 40
 C. Failure to Consider the FDA's Other Arguments
 
 
 41
 Even if the district court were correct in its decision that the FDA's no prejudice argument was substantially justified, it still erred by failing to consider the substantial justification of the agency's other defenses. The EAJA "favors treating cases like an inclusive whole, rather than as atomized line items." Commissioner, INS v. Jean, 496 U.S. 154, 162, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). We have already held that substantial justification on the part of the Government in opposing one of the plaintiff's claims does not render its position substantially justified as to all of its other claims. Goldhaber v. Foley, 698 F.2d 193, 197 (3d Cir.1983).
 
 
 42
 We do not hold that every argument made by an administrative agency must be substantially justified. See Citizens Council of Delaware County v. Brinegar, 741 F.2d 584, 595 (3d Cir.1984).[10] Nevertheless, a district court must evaluate every significant argument made by an agency as part of its EAJA fee evaluation, to determine if the argument is substantially justified. This is necessary to permit us to review a district court's decision and determine whether, as a whole, the Government's position was substantially justified. In this case, for example, even if we affirmed the district court on the "no-prejudice" argument, it is possible that the FDA might have been substantially unjustified as to every other argument. If so, then Hanover might have been forced to spend money opposing these arguments, making a fee award proper.
 
 IV. CONCLUSION
 
 43
 Ordinarily, we would reverse and remand for the district court to make a proper determination of substantial justification. Because we have here determined that the district court erred by finding the agency's pre-litigation and "no-prejudice" positions substantially justified, and because that agency's conduct was in itself sufficient to merit an award of fees, we will reverse and remand with instructions to enter an appropriate fee award in favor of Hanover and its co-plaintiffs.
 
 
 
 *
 Honorable Stewart Dalzell, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Fresh potatoes are potato products that are not canned, frozen or dehydrated, and include whole peeled potatoes, sliced/diced potatoes, french fries and hash browns
 
 
 [2]
 In addition, on April 9, a consultant for Hanover met with FDA officials concerning the fragmented state of the record and the need for a stay
 
 
 [3]
 The district court also concluded that, because plaintiffs were aware of the FDA's proposed regulation but took no steps to produce potatoes in compliance with it, their harm was not irreparable
 
 
 [4]
 Hanover served a notice of deposition on the FDA, seeking additional information concerning the sulfate ban. The FDA then successfully sought a protective order, on the ground that nothing not appearing in the eighty-three volume record could be considered by the court in deciding the legality of the regulation
 
 
 [5]
 The district court reached this conclusion without regard to whether Hanover, or anyone else, was denied a meaningful opportunity to comment during the comment period. Rather, it held that FDA's failure to follow its own regulations was in itself arbitrary and capricious, stating that "[i]nterested persons should not be expected to seek out relevant information at various unspecified locations."
 
 
 [6]
 The district court's opinions therefore constitute the law of this case on the merits
 
 
 [7]
 The FDA argues that even when a district court errs as a matter of law in an EAJA determination of substantial justification, a single, unitary, abuse of discretion standard should still apply, citing United States v. Paisley, 957 F.2d 1161, 1165 (4th Cir.1992). We disagree. To the extent Paisley appears to hold that Pierce requires such a standard, we think it over-reads Pierce. The legal issue in both cases was not whether the district court applied the proper standard to decide the fee application, but whether the Government was substantially justified in believing the law to support the legal position it asserted in the merits phase of the proceedings. The rationale behind Pierce was to prevent appellate courts from having to inquire de novo, at considerable expense of time and effort, whether the Government could reasonably have thought its position was substantially justified when taken. We do not read Pierce to imply that courts of appeal are restricted in their supervision of the district courts when those courts themselves apply incorrect legal standards
 In any event, DeWalt was decided by this court after Pierce, and clearly holds that application by a district court of an improper legal standard under EAJA is subject to plenary review. 963 F.2d at 28. Although the FDA attempts to distinguish DeWalt by limiting it to cases involving pure statutory interpretation, we are not persuaded by this distinction. Although statutory interpretation of the EAJA was the issue in DeWalt, the standard of review we applied there was consistent with the standard we have applied under a variety of other fee-shifting statutes involving both the availability and amount of fees, as noted in the main text.
 
 
 [8]
 Before Pierce, our standard of review would also have been plenary. See Taylor, 835 F.2d at 1039
 
 
 [9]
 Also undermining the FDA's "no prejudice" argument is the fact that, quite apart from whether Hanover reviewed the administrative record before submitting its comments, the interested public was also deprived of the opportunity to examine the true record. In Texaco, Inc. v. Federal Power Commission, 412 F.2d 740, 744 (3d Cir.1969), we stated that one of the purposes of notice-and-comment rulemaking "was to give the public the opportunity to participate in the rulemaking process." Other courts have agreed. For example, in Connecticut Light & Power Co. v. Nuclear Regulatory Commission, 673 F.2d 525, 530 (D.C.Cir.1982), the court noted in dictum that the
 purpose of the comment period is to allow interested members of the public to communicate information, concerns, and criticisms to the agency during the rule-making process.... In order to allow for useful criticism, it is especially important for the agency to identify and make available technical studies and data that it has employed in reaching the decisions to propose particular rules. To allow an agency to play hunt the peanut with technical information, hiding or disguising the information that it employs, is to condone a practice in which the agency treats what should be a genuine interchange as mere bureaucratic sport. An agency commits serious procedural error when it fails to reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary [citing cases].
 See also Home Box Office, Inc. v. FCC, 567 F.2d 9, 54 (D.C.Cir.1977) ("[e]ven the possibility that there is here one administrative record for the public and this court and another for the [agency] and those 'in the know' is intolerable"). We believe a regulated party automatically suffers prejudice when members of the public who may submit comments are denied access to the complete public record.
 
 
 [10]
 Brinegar involved the issue of whether the district court should focus on each of the plaintiff's legal arguments and reduce the fee award for each one that failed. The court held that when the various legal theories were intertwined, as they are here, no apportioning was required. We still believe, however, that under an abuse of discretion standard of review, the district court must evaluate each argument separately to permit appellate review of its exercise of discretion